# Fuller *v.* The State.

*Application for Habeas Corpus.*

1. *Pardoning power; includes right to make conditional pardon or parole.*—Under the constitutional provision conferring the pardoning power upon the Governor ·(Const. Art. V., § 12), the Governor has power to grant conditional pardons, or to parole a convict.

2. *Same; same; constitutionality of statute.*—The statute providing that the Governor may parole a convict for good behavior. and that on failure of such convict to observe the conditions of his parole the Governor shall have authority to direct his re-arrest and return to custody, and that such convict shall thereupon be required to carry out the sentence of the court, (Cr. Code, § § 5461, 5462), is not violative of the constitutional guarantee, that no warrant shall be issued to seize a person without probable cause supported by oath or affirmation, &c.; since being a felon at large by executive clemency, which he has accepted on conditions included therein, the convict, upon violation of such conditions, is merely an escaped convict, and not entitled to invoke such constitutional guarantee.

3. *Same; same; same.*—Under such statute, a convict who has been paroled, upon violating the condition of his parole, may, upon the direction of the Governor, be re-arrested and returned to custody and required to serve out the unexpired part of the sentence of the court, as though no parole had been granted, even after the time his sentence would have ended, but for the suspension thereof by the parole,

[Fuller v. The State.]

. APPEAL from the Probate Court of Montgomery. .
Heard before the Hon. J. B. GASTON.

On April 1, 1899, the appellant, Brooks Fuller, by his
attorney, filed a petition, addressed to the Judge of Pro-
bate of Montgomery County. This petition was as fol-
lows: "The petitioner alleges that he is illegally re-
strained of his liberty and detained in the custody of the
said W. W. Jones for and on account of the Board of
Convict Inspectors, or for and on account of the State
of Alabama: because,

*First.* That the Governor of the said State of Ala-
bama had no authority to order his re-commitment to
the penitentiary, or to the custody of the State as a
prisoner without the said petitioner having first had a
day and a hearing before a court which has jurisdiction
to determine whether or not he had violated the terms
of his parole.

*Second.* Because section 5462, Code of 1896, from
which the pretended authority for his detention is de-
rived, is unconstitutional in that. '(First.) It denies to
the petitioner the right to be confronted by the accuser or
the witnesses against him. (Second.) It denies him
the right of being heard by himself or his counsel upon
the accusation lodged against him. (Third.) It denies
him the right of a trial by jury. (Fourth.) Its effect is
to suspend the operation of the writ of *habeas corpus.*
(Fifth.) The petitioner alleges further that he has not
violated any of the conditions of his said parole.

*Third.* The petitioner alleges, that the mandate of
the Governor, commanding the sheriff of Montgomery
County to arrest petitioner and remand him to the con-
vict department to serve out a sentence, is violative of
Art. VI of the Constitution of the State of Alabama.

*Fourth.* The petitioner alleges that he is further en-
titled to his discharge in said cause and that said order
of recommitment by the Governor of the State of Ala-
bama is done without authority or legal right, because
there is now no unexpired sentence for him to serve, the
same having expired on August 17th, 1897, by operation
of law. Wherefore, the premises considered, your peti-
tioner prays that he be discharged from custody."

3

S. B. Trapp, the president of the Board of Convict Inspectors, in answer to the writ issued on the filing of this petition, showed the following facts: At the August term, 1896, the petitioner, Brooks Fuller, was convicted of the crime of assault with intent to murder, and sentenced to imprisonment in the penitentiary for five years. On November 30, 1896, his sentence was commuted by the Governor to one year imprisonment in the penitentiary. On February 24, 1897, he was paroled by the Governor, under the authority of the act now constituting section 5461 and section 5462 of the Code of 1896. On March 29, the following order was issued by the Governor: "Chas. E. Parks, Esq., Sheriff of Montgomery County, Ala.—I am informed that Brooks Fuller has violated the terms of the parole granted him by me. You are, therefore, directed to deliver him to the convict department to serve out his term according to law. Yours respty., Jos. F. Johnston, Gov." The President of the Board of Convict Inspectors further answered that the petitioner was detained on the said order or writ issued by the Governor, and which is copied above. Upon these facts, the Probate Judge denied the prayer of the petitioner, and remanded the prisoner to the custody of the Board of Convict Inspectors to serve out that portion of the original sentence imposed upon him, which was unexpired on February 24th, 1897. From this judgment refusing to discharge the petitioner the present appeal is prosecuted, and the rendition thereof is assigned as error.

JOHN W. A. SANFORD, JR., for appellant.—The Governor has no power under the Constitution, to issue such an order as is attached to the writ to the petition of *habeas corpus* and made a part of the answer, because the Constitution gives him no power and makes no provision for any such process. The act of the Legislature, now designated as § § 5461 and 5462, gives the Governor powers in conflict with the Constitution. Section 5462, under which the order of the Governor is claimed to have been issued, which said order is made the basis of the detention of petitioner, is clearly unconstitutional

and void. It denies to the petitioner the right of being heard by himself or his counsel upon the accusation lodged against him. It denies him the right of a trial by jury. This is clearly violative of our Constitution.— Const. Art. I, § 7; *Attorney-General v. Buckley,* 54 Ala. 620; *Anderson v. State,* 89 Ala. 12; *State of Michigan v. Cummings,* 14 L. R. A. 285.

A convict who has received and accepted a conditional pardon cannot be arrested and remanded to serve out his original term because of the alleged non-performance of the condition upon the mere order of the Governor. He is entitled to a hearing before the court in which he was convicted, or some superior court of criminal jurisdiction, and the opportunity to show that he has performed the condition of his pardon or that he has a legal excuse for not having done so.—*State of Minn. ex rel. O'Connor v. Wolfer,* 19 L. R. A. 783.

The time between the conditional pardon and subsequent arrest shall be taken to be a part of the term of sentence.—*West's Case,* 111 Mass. 443.

It has been held that where the unlimited power to pardon is conferred by law (constitutional or statutory) it carries with it the right to pardon conditionally; and that when a pardon is so granted, and is accepted upon the conditions imposed, the Governor has authority to judge of the breach of the conditions and to revoke it, as for a breach, whenever he shall see fit.— *Woodward v. Murdock,* 24 S. E. Rep. 1047, and cases cited.

It is against the spirit of our institutions that a man should be condemned to serve for a period during which executive clemency has been granted. And if there were any doubt whether this were the proper construction of the statute, this doubt should be resolved in favor of the prisoner because penal statutes are always strictly construed. This is because the construction will be adopted most in favor of human life and liberty.— *Noles v. State,* 24 Ala. 672; *Huffman v. State,* 29 Ala. 40; *Mangham v. Cox,* 29 Ala. 81.

CHAS. G. BROWN, Attorney-General, for the State. Conditional pardons at common law are co-eval with the law itself.—*Guillian's Case,* Coke Litt. 274, b. This prerogative of the Executive we inherited from the common law, and it has been sustained in many States where the pardoning power is conferred in language similar to that of our constitution as well as by the Supreme Court of the United States.—*Ex parte Wells,* 18 How. 307; *People v. James,* 2 Col. 57; *State v. Smith,* 1 Bailey (S. C.) 283; *State v. Addington,* 2 Bailey 516; *Kennedy's Case,* 135 Mass. 48; *Flovell's Case,* 8 Watts & Serg. 196; *State v. Barnes,* 32 S. C. 14; *Arthur v. Craig,* 48 Iowa 264; *Conlon's Case,* 148 Mass. 168; *State v. Peters,* 43 Ohio St. 629.

This is all that sections 5461 and 5462 of the Code undertakes in this State to do. The power to attach conditions to a pardon and to revoke a pardon and return the prisoner to custody upon the violation of such condition, is a power conferred upon the executive by the constitution. Therefore, the legislature's attempt to render the exercise of such a power convenient and effective does not violate other articles of the constitution in such a way as to strike down the constitutional right of the executive to exercise the pardoning power in a way that he may deem best.—Authorities *supra.*

A paroled convict who has violated the conditions of his parole occupies only the position of an escaped convict, and can not invoke the organic guarantee of a trial by jury, and that no warrant shall be issued for the arrest of any one, without probable cause, supported by oath or affirmation, &c.—*Ex parte Wells,* 18 How. 307; *Conlon's Case,* 148 Mass. 168; *State v. Peters,* 43 Ohio St. 629; *Arthur v. Craig,* 48 Iowa 264; *Ex parte State,* 19 Ohio St. 581.

McCLELLAN, C. J.—Section 12 of Article V of the Constitution confers the pardoning power on the Governor in this language: "The Governor shall have power to remit fines and forfeitures, under such rules and regulations as may be prescribed by law, and after conviction, to grant reprieves, commutation of sentence,

and pardons, except in cases of treason and impeachment."

It is the settled law that this grant includes power to grant conditional pardons, the condition to be either precedent or subsequent, and of any nature so long as it is not illegal, immoral, or impossible of performance; and that a breach of the condition avoids and annuls the pardon.—*Ex parte Wells,* 18 Howard, (U. S.) 307; *Woodward v. Murdock,* 13 Cr. L. Mag. 71, and notes; *Arthur v. Craig,* 48 Iowa 264; *State v. Barnes,* 32 S. C. 14, and cases cited; *State v. O'Connor,* (Minn.) 19 L. R. A. 783, and cases cited; note to *Michigan v. Cummings,* 14 L. R. A. 285.

The parole of a convict is in the nature of a conditional pardon and within the constitutional grant of the pardoning power to the Governor. The power to grant pardons, absolute or conditional, cannot of course, be taken away from the Executive, nor limited by legislative action; but the General Assembly may enact laws to render its exercise convenient and efficient.—*Kennedy's Case,* 135 Mass. 48.

The legislature of this State has enacted such a law in respect of that description of conditional pardons known as "paroles;" and this statute is now embodied in sections 5461-2 of the Code, which are as follows:

"5461. *Governor may suspend sentence, and parole convict on good behavior.*—The Governor may, whenever he thinks best, authorize and direct the discharge of any convict from custody and suspend the sentence of such convict without granting a pardon, and prescribe the terms upon which a convict so paroled shall have his sentence suspended.

"5462. *Convict failing to observe terms of parole may be rearrested and required to serve out sentence.* Upon the failure of any convict to observe the conditions of his parole, to be determined by the Governor, the Governor shall have authority to direct the re-arrest and return of such convict to custody, and thereupon said convict shall be required to carry out the sentence of the court as though no parole had been granted him."

These sections are really not open to construction; and little need be said in their interpretation. The

parole does not in anywise displace or abridge the sentence; it merely stops its execution for a time only, it may be, or indefinitely, it may prove—it suspends not destroys. The suspension is like that which occurs constantly in the administration of criminal laws where the defendant appeals from the judgment of conviction. The execution of the sentence is by the appeal superseded and postponed pending the appeal; and if the judgment is affirmed the execution of the sentence thereupon begins and continues for the period set down originally in the judgment. So the word is used in this statute; and upon condition broken, the sentence, which has all along hung in its entirety over the liberty of the paroled convict, is to be executed upon him "as though no parole had been granted to him." This is the plain meaning of the statute; and so interpreted, it involves of necessary consequence the proposition that upon condition broken even after the time at which the sentence would have ended but for its suspension, the convict may still be remanded to custody that the unserved, and hence unexpired, part of the sentence—that part which he was released from serving during the period of durance originally specified—may be executed upon him. So the law is written.

That it was competent for the legislature to so provide, we entertain no serious doubt. A parole, like every other pardon, is subject to rejection or acceptance by the convict. He has an unfettered election in that regard, and the executive order is not effective or operative until it has been accepted by him. If he prefers to serve out his sentence, as originally imposed upon him, to a suspension of it by subjecting himself to the conditions nominated in the parole, he has the clear right to do so. But if he elects to accept the parole and avails himself of the liberty it confers, he must do so upon the conditions upon which alone it is granted to him. One of these conditions is that his sentence shall continue *in fieri,* and that the government shall have the power to execute it in full upon him should he forfeit the liberty and immunity conditionally secured to him by the executive order. That a convict having only a short

time remaining of his sentence would make an unwise choice by accepting a parole upon onerous conditions for a breach of which he might years after be remanded to complete his sentence affords no argument against the constitutional integrity of the enactment. That a person cannot by convention with the Governor become a convict, and that by mere convention with the Executive a convict cannot alter his term of servitude, or the dates at which it is to begin and end, is no impeachment of a *statute* which provides for such alterations—for the suspension of a sentence during a part of its original period, and its execution as to such part at a time beyond that fixed in the judgment of conviction for its termination. The same power which provides for the original sentence, the law-making power of the land, provides also, in this instance, for its suspension, and for its ultimate execution, in a given contingency, at another and different time; and it is equally potent in both respects. And the postponing of the sentence in such case is not merely by convention with the Governor, but is by force of a potential statute well within legislative competency to deal with the execution of sentences imposed upon convicts. It is the law that in such case postpones under certain circumstances the execution of the sentence to another time, just as it is the law which postpones upon appeal taken, the execution of sentence until another time. So it has been ruled of a similar statute in Massachusetts, (*Conlon's Case*, 148 Mass. 168); such is the view of the Supreme Court of Minnesota expressed in a well considered opinion, (*State v. O'Connor*, 19 L. R. A. 783); and in South Carolina a like result is rested alone upon the Governor's constitutional pardoning power.—*State v. Barnes*, 32 S. C. 14, and cases there cited. And at an earlier day it was supposed in Massachusetts to be necessary to provide by statute that the time during which the convict is at large under parole should be deducted from the unexpired sentence upon his remandment for breach of the condition of the parole, to the end that he should not be made to serve beyond the time fixed for the termination of the original sentence.—*West's Case*, 111

[Fuller v. The State.]

Mass. 443. This statute was afterwards amended as indicated in *Conlon's Case, supra.* See also on the general question of the constitutionality of statutes providing for paroling convicts, *State ex rel. etc. v. Peters,* 43 Ohio St. 629.

. But it is insisted that this statute, in so far as it undertakes to authorize the Governor to determine that the condition of the parole has not been complied with, and the summary arrest of the convict thereupon by the direction of the Governor, and his summary return or remandment to servitude or imprisonment under the sentence, is violative of organic guarantees of jury trial, that no warrant shall be issued to seize any person without probable cause supported by oath or affirmation, etc., etc. This position takes no account of the fact that the person being dealt with is a *convict*, that he has already been seized in a constitutional way, been confronted by his accusers and the witnesses against him, been tried by the jury of his peers secured to him by the constitution and by them been convicted of crime, and been sentenced to punishment therefor. In respect of that crime and his attitude before the law after conviction of it he is not a citizen, nor entitled to invoke the organic safeguards which hedge about the citizen's liberty, but he is a felon, at large by the mere grace of the Executive, and not entitled to be at large after he has breached the conditions upon which that grace was extended to him. In the absence of this statute, a convict who had broken the conditions of a pardon would, if there were no question of his identity or the fact of breach of the conditions, be subject to summary arrest and remandment as matter of course to imprisonment under the original sentence by the court of his conviction or any court of co-ordinate or superior jurisdiction —a purely formal proceeding. If the person arrested denied his identity with the convict sought to be remanded, he might be entitled to a jury trial on that issue alone. If he denied only the alleged breach of the conditions of his enlargement, he would not be entitled to a jury on that issue, but it would be determinable in a summary way by the court before whom he is brought.

But the statute supervenes to avoid the necessity for any action by the courts in the premises. The executive clemency under it is extended upon the conditions named in it, and he accepts it upon those conditions. One of these is that the Governor may withdraw his grace in a certain contingency, and another is that the Governor shall himself determine when that contingency has arisen. It is as if the convict, with full competency to bind himself in the premises, had expressly contracted and agreed that whenever the Governor should conclude that he had violated the conditions of his parole an executive order for his arrest and remandment to prison should at once issue, and be conclusive upon him. Of course, if in the execution of the order of arrest the wrong man should be taken, he would be entitled to enlargement on *habeas corpus;* but there is no question of identity in the case before us. Upon such determination by the Governor, evidenced by the executive order of arrest, the parole is avoided and the person who has been at large upon it at once falls into the category of an escaped convict, so far as measures for his apprehension and remandment under the original sentence is concerned, and he is no more than an escaped convict entitled to freedom from arrest except upon probable cause supported by oath or affirmation, nor to a trial by jury, nor to his day in court for any purpose.— *Kennedy's Case,* 135 Mass. 48; *Conlon's Case,* 148 Mass. 168; *Arthur v. Craig,* 48 Iowa, 264; *State ex rel. O'Connor v. Wolfer,* 19 L. R. A. 787.

Appellant relies mainly upon the case of *Michigan v. Cummings,* decided by the Supreme Court of Michigan. Neither the argument nor the conclusion in that case is satisfactory, and its unsoundness is demonstrated, we think, in the notes appended to the report of it in 14 L. R. A. 285.

The order of the probate judge denying the convict's petition for *habeas corpus* is in consonance with the foregoing views, and it will be affirmed.

Affirmed.