## IN RE CONDITIONAL DISCHARGE OF CONVICTS.

### Opinion of the Judges.

#### Submitted to the Governor May 29, 1901.

*Constitutional law—The power to grant pardons, conditional as well as absolute, is a constitutional prerogative of the Governor*—The power to grant pardons being conferred upon the Governor by the constitution in unrestricted terms, except in cases of murder, treason and impeachment, he has, except in such cases, authority to grant every kind of pardon known to the common law. A pardon granted by him may be full and absolute, or partial and conditional, provided no condition of a pardon be illegal, immoral or impossible.

*Constitutional law—The power of the Governor to pardon cannot be taken away, restricted or conferred upon others by the legislature*—The pardoning power conferred upon the Governor by the constitution cannot be taken away or restricted by the legislature, nor can a like power be given by the legislature to any other officer or authority.

*Constitutional law—Construction of statutes—V. S. 5306—A conditional discharge is equivalent to a conditional pardon*—The conditional discharge which V. S. 5306 assumes to authorize the Governor to grant is equivalent to a conditional pardon, which the Governor may grant, irrespective of the statute, by virtue of the constitution. Neither is a remission of guilt, as is a full pardon.

*Constitutional law—Construction of statutes—Section 8 of No. 126, Acts of 1898, was wholly unconstitutional and void—Section 4 of No. 104, Acts of 1900*—Section 8 of No. 126, Acts of 1898, undertook to transfer the power of conditional pardon from the Governor to a board of prison commissioners, as to all convicts sentenced after the passage of the act, and to provide a remedy and procedure, corresponding to that pointed out in V. S. 5306 to 5309 inclusive, for cases in which a convict should violate the conditions of a discharge granted him by the board of prison commissioners, and was wholly unconstitutional and void. Neither said act No. 126, nor the repeal of certain sections thereof by section 4 of No. 104, Acts of 1900, affected the exclusive power of the Governor to grant conditional pardons to convicts, irrespective of the date of their sentence.

*Constitutional law—Construction of statutes—Acts of 1898, No.
127—Indeterminate sentences*—An indeterminate sentence, provided
for by section 1, No. 127, Acts of 1898, is, in law, a sentence for
the maximum term, and the board of prison commissioners has no
authority to grant a conditional discharge to a prisoner after the
expiration of the minimum term named in the sentence. Such a
discharge would be an encroachment upon the pardoning power of
the executive, and the statute assuming to authorize it is uncon-
stitutional and void. The prison commissioners can grant neither
a discharge nor a parole to a convict in any case.

*Conditional pardons—Effect of non-performance of conditions—Lia-
bility to be remitted to custody*—By the non-performance of the
conditions of a pardon accepted by a convict, the pardon becomes
void, and the convict is liable to be remitted to imprisonment
under his original sentence.

*Conditional pardons—Remitting a convict to imprisonment under his
former sentence—Statute providing for procedure—Construction
of V. S. 5308 and 5309*—V. S. 5308 and 5309, continued in force as
to convicts sentenced before No. 126, Acts of 1898 took effect, do
not provide for remitting to imprisonment under his former
sentence a convict who has violated the conditions of his pardon,
but create a new offense, that of an escape, and provide a penalty
therefor, and before a person can be punished under such a statute
he is entitled to a trial in due course of criminal procedure.

*Conditional pardons—Remitting a convict to imprisonment under his
former sentence—Common law procedure*—At common law a
prisoner unlawfully at large by reason of the violation of the con-
ditions of a pardon, or otherwise, might be brought to the bar and
remanded to imprisonment under his original sentence.

*Conditional pardons—Remitting a convict to imprisonment under his
former sentence—Procedure in conformity to a provision of the
pardon itself*—In the absence of a valid statutory procedure, and
without resort to the procedure of the common law, a convict con-
ditionally pardoned or discharged cannot be remitted to imprison-
ment under his former sentence, except in conformity to a valid
provision in that respect contained in the pardon. If a conditional
pardon, accepted by a convict, contains a provision that upon non-
compliance with the conditions the convict may be apprehended
and remitted to his former custody upon the Governor's warrant,
issued for that purpose, such provision is binding, and the Gov-
ernor may proceed in accordance therewith.

To the Honorables

> Russell S. Taft,
> John W. Rowell,
> James M. Tyler,
> Loveland Munson,
> Henry R. Start,
> John H. Watson,
> Wendell P. Stafford,
>> Judges of the Supreme Court.

In accordance with the provisions of section 1006 of the Vermont Statutes, the Governor of the State of Vermont, respectfully requires an opinion in writing of your Honors upon the following questions of law connected with the discharge of his duties, as Governor.

Sections 5306 to 5309 of the Vermont Statutes read as follows:

"Sec. 5306. The governor may discharge a convict in the state prison or house of correction, sentenced by the authority of the state, on such conditions as he judges proper. The discharge shall state the sentence upon which such convict was committed, the conditions of his discharge, and that if he fails to keep the same, he shall be deemed to have escaped from the institution from which he was discharged and be liable to be returned thereto and imprisoned for the whole term for which he was sentenced.

Sec. 5307. The governor shall cause all such discharges to be recorded at length in a book kept by him for that purpose, and a copy of the mittimus on which the convict was committed to be lodged in the files of the executive department.

Sec. 5308. If a convict so discharged fails to keep the conditions of his discharge, he shall be deemed to have escaped from the institution from which he was discharged, and if he is retaken and returned to such institution the term for which

he was sentenced to be confined shall be deemed as commenced at the time he is so returned, and he shall be confined after his return the whole term for which he was sentenced.

Sec. 5309. The governor, granting such discharge, or any successor, if satisfied that such convict has failed to keep the conditions of his discharge, ·shall issue under his official signature and seal of the state a copy of the mittimus on which the original commitment was made, which copy shall have all the force of the original mittimus, to arrest, return, recommit and retain the convict in the institution from which he was discharged."

The foregoing sections were amended by No. 126 of the Acts of 1898, which took effect November 16, 1898 and among other things provided as follows:

"Sec. 3. All applications for pardon shall be referred to said board, and their recommendation shall be submitted to the governor for his consideration before he decides upon such application.

Sec. 4. Said board shall hear and determine all applications for the release on parole of convicts in the state prison or house of correction, and shall have authority to make such rules and regulations regarding the same as they shall deem best; and shall hold meetings at such times and places as they shall think advisable.

Sec. 8. All the duties and powers conferred upon the governor by sections 5306, 5307, 5308 and 5309 of the Vermont statutes are hereby conferred upon and given to said board of prison commissioners and the governor is relieved therefrom as to all convicts sentenced after the passage of this act.

Sec. 10. Sections 5306, 5307, 5308 and 5309 of the Vermont statutes are continued in force as to all convicts sentenced

before the passage of this act and the provisions of this act shall not apply to such convicts."

The foregoing act was amended by No. 104 of the laws of 1900 which took effect November 27, 1900 and among other things provided as follows:

"Section 2. Section 3 of said Act No. 126 is hereby amended to read as follows:

All applications for pardon or conditional discharge may be referred in his discretion by the governor to said board for investigation, and its reports thereon shall be of an advisory nature.

Section 4. Section 8 and section 10 of said Act No. 126 are hereby repealed."

1. Under the provision of the law as it now stands, has the governor authority to discharge conditionally from the state prison and house of correction convicts sentenced thereto before November 16, 1898?

2. Has the governor authority to discharge conditionally from the state prison and house of correction convicts sentenced after November 16, 1898 and before November 27, 1900?

3. Has the governor authority to discharge conditionally from the state prison and house of correction convicts sentenced after November 27, 1900?

4. Has the board of prison commissioners authority to discharge conditionally from the state prison and house of correction any convicts excepting after the expiration of the minimum term of such convicts as have been sentenced to a maximum and minimum term?

5. Has the governor authority to issue a warrant to return to the state prison or house of correction a convict conditionally discharged before November 16, 1898, who has violated the conditions of such discharge?

6. Has the governor authority to issue a warrant to return to the state prison or house of correction a convict sentenced before November 16, 1898, and conditionally discharged after November 16, 1898, and before November 27, 1900, who has violated the conditions of such discharge?

7. Has the governor authority to issue a warrant to return to the state prison or house of correction a convict sentenced and discharged after November 16, 1898, and before November 27, 1900, who has violated the conditions of such discharge?

8. Has the governor authority to issue a warrant to return to the state prison or house of correction a convict sentenced and conditionally discharged after November 27, 1900, who has violated the conditions of such discharge?

9. Is a convict conditionally discharged by the governor between November 16, 1898, and November 27, 1900, lawfully at liberty?

WILLIAM W. STICKNEY.

To His Excellency,

William W. Stickney,

Governor of the State of Vermont:

SIR:—

In reply to your foregoing requirement for the opinion of the Judges of the Supreme Court upon the construction of the statute relating to the conditional discharge and the paroling of convicts in the state prison and house of correction, we have the honor to submit the following opinion:

The power to grant pardons is given to the executive by the constitution in unrestricted terms, except in cases of treason, murder, and impeachment; and that such general power includes the authority to grant all kinds of pardon known to the common law, is well settled. The grant may be for a full, partial, absolute, or conditional pardon, provided the condition

be not illegal, immoral, or impossible to perform: 2 Hawk. P. C. 547; *Ex Parte* Wells, 18 How. 307; *Lee* v. *Murphy,* 22 Gratt. 789, 12 Am. Rep. 563. This power can neither be restricted nor taken away by legislative action. Nor can a like power be given by the legislature to any other officer or authority: Cooley's Con. Lim. 133.

Section 5306 of the Vermont statutes provides that the governor may discharge a convict in the state prison or house of correction, sentenced by the authority of the state, on such conditions as he judges proper. Such a discharge is a conditional pardon, the full authority to grant which is vested in the executive by the constitution. A conditional discharge under the provisions of this statute is not unlike a conditional pardon, except in name which is of but little consequence. An instrument was issued under the seal of the United States by President Munroe, in which he directed for causes therein stated, that the prisoner "be forthwith released from prison," and it was held to be a pardon: *Jones* v. *Harris,* 1 Strob. 160. In a similar instrument issued by President Jackson, he used the words "do hereby remit unto him, * * * the remainder of said sentence, and order him to be liberated from further imprisonment on payment of the costs," and this was held to be a pardon: *Hoffman* v. *Castor,* 2 Whar. 453. In that case the court said, "it does not appear that any particular language or form of words is necessary in such an instrument. In some of the ancient pardons, a variety of language is to be found; such as acquit, pardon, release, and exonerate. In others, only the word pardon;" and further, that in Pennsylvania the practice is to recite the offense, conviction, and sentence, and then remit the sentence; also that at common law, referring to 3 Co. Inst. 235, remitting the indictment pardoned the offense, and after sentence, remitting the sentence had the same effect.

A discharge under the statute embraces all within the punishment except that which has already been executed, and if the prisoner performs the conditions imposed, he is forever free from further execution. A pardon with like conditions, under the executive prerogative, can do no more; for, as hereinafter will be shown, neither is a remission of guilt.

No. 126, laws of 1898, was approved November 16, and took effect from its passage. By section 1, a board of prison commissioners is established. By section 8, all the duties and powers conferred upon the governor by sections 5306 to 5309 inclusive,of the Vermont statutes,are conferred upon and given to the prison commissioners, and the governor is relieved therefrom as to all convicts sentenced after the passage of that act. The effect of this act would be to transfer the power of conditional pardon from the governor to the board of prison commissioners, which, as before seen, cannot be done by legislative action; and section 8 of No. 126 is unconstitutional and void.

The other provisions of section 5306, and the provisions of sections 5307, 5308, and 5309 relate to the procedure and remedy in case a convict fails to perform the conditions of his discharge, and they are dependent upon the power to make the grant; for without the exercise of that power, there is nothing to which such provisions can apply. Herein it is impossible to give effect to the manifest intent of the legislature with the power to grant the discharge taken away; and as the provisions touching the latter are unconstitutional, the whole must fall together: Cooley's Con. Lim. 209-213; *Allen* v. *Louisiana,* 103 U. S. 80.

By section 10 of No. 126, sections 5306 to 5309 inclusive, are continued in force as to all convicts sentenced before No. 126 was passed, and the provisions of that act do not apply thereto. Except as to the convicts named, those sections of the Vermont statutes were thereby repealed by implication,

upon the principle that where a statute enumerates the persons or things to be affected by its provisions, there is an implied exclusion of all others: Suth. on Stat. Const. sec. 327. By section 4 of No. 104, laws of 1900, sections 8 and 10 of No. 126, laws of 1898, are expressly repealed; but sections 5306 to 5309 inclusive, were not thereby revived: V. S. 29.

Therefore, questions one, two, three, and nine submitted, are severally answered in the affirmative.

The questions submitted relative to the authority of the governor to issue warrants for the return of the prisoners who have violated the conditions of their discharge, involve his authority in that regard generally, as well as under section 5309, V. S., which has been repealed except as to convicts sentenced before November 16, 1898.

The authorities seem to agree that when a convict fails to perform the conditions of his pardon, he is liable to be remitted to his original sentence. This is the only logical result, for by non-performance of the conditions the pardon becomes void, and the prisoner is in the same state in which he was at the time his pardon was granted. The statute provides that if the convict fails to perform the conditions he shall be deemed to have escaped, and shall be liable to be returned to the prison from which he was discharged and imprisoned for the whole term for which he was sentenced; and if returned, the term of his sentence shall be deemed as commenced at the time of his return and continue thereafter the whole term of the sentence. This is not remitting the prisoner to his original sentence. It is the creating of a new offense with a penalty therefor. At common law, the non-performance of the conditions of a pardon is not an offense, but by the provisions of this statute, it is deemed an escape; and the extent of the penalty to be imposed is measured only by the time a convict serves on his original sentence before he receives his conditional discharge. Before

a person can be thus punished, his guilt must be established by a plea of guilty, or by trial had in due course of criminal procedure: *Kennedy's case,* 135 Mass. 48; *State* v. *Wolfer,* 53 Minn. 135, 39 Am. St. Rep. 582; *Ackle's case,* 1 Leach, 390; *Miller's case,* id. 74; *Madam's case,* id. 223; 23 Ir. L. T. 523. The original mittimus is not issued in a prosecution for this new offense, therefore it has no force therein. It follows that a copy issued under the provisions of section 5309 can have none. As to all convicts sentenced after No. 126, laws of 1898, took effect, resort would need be had to the common law for the proper procedure in case a convict fails to perform the conditions of his pardon, unless the conditions contain a provision that upon a non-compliance therewith, the prisoner may be apprehended and remitted to his former custody upon the governor's warrant issued for that purpose. We think such a provision may be inserted in the conditions of the pardon itself, and when it is thus inserted, the prisoner voluntarily submits himself thereto by accepting the pardon, and he is bound thereby: *Arthur* v. *Craig,* 48 Iowa, 264, 30 Am. Rep. 395; *State* v. *Wolfer, supra.* In the case of *United States* v. *Wilson,* 7 Peters, 150, the court, speaking through Mr. Chief Justice Marshall, said a pardon was a deed to the validity of which delivery was essential, and delivery was not complete without acceptance; and in *Ross* v. *McIntyre,* 140 U. S. 453, speaking through Mr. Justice Field, the court said there could be no question as to the binding force of the acceptance.

At common law if sentence had been imposed, and the convict is at large, he may be brought to the bar and remanded to suffer his original sentence: Bacon's Abr. tit. Pardon, E; 1 Chitty Cr. Law, 773; *State* v. *Wolfer, supra.* And from *Ackle's case, Miller's case, Madam's case,* and the Irish Law times before cited, it would seem that such statutory offense and penalty therefor, do not supercede the common law procedure.

They may co-exist, and the latter may be invoked in any case suitable therefor.

Therefore, except as above otherwise indicated, questions five, six, seven, and eight are answered in the negative.

By section 1 of No. 127, Laws of 1898, it is provided that when a convict is sentenced to the state prison or house of correction otherwise than for life, or as an habitual criminal, the sentence shall not be for a fixed term of imprisonment, but a maximum and minimum term shall be established; and by section 7, the act applies only to offenses committed subsequent to the time when it took effect,—November 16, 1898,—while as to all previous offenses the law continues the same as before the act was passed. Although such a sentence is in terms indeterminate, it is in law for the maximum term; for until the expiration thereof a convict is in the custody of the law under his sentence, and in confinement unless he can be and is paroled by the board of prison commissioners under the provisions of this act, after the expiration of the minimum term of his sentence: *Oliver* v. *Oliver,* 169 Mass. 592; *Murphy* v. *Commonwealth,* 172 Mass. 264, 70 Am. St. Rep. 266. Whether the prison commissioners can grant such a parole depends upon whether the law giving them that power is an encroachment upon the prerogatives of the executive. Is the granting of a parole within the pardoning power? If it is, the power is exclusively with the executive, and the law is such an encroachment. Under the constitution of Indiana the pardoning power is vested in the executive subject to such rules and regulations as may be made by law. No legislation was had thereon, by reason whereof the power was with the executive to its full extent. The governor granted a parole, and later by his command the prisoner was re-imprisoned because he had failed to perform the conditions of his parole. One question before the court was whether the release granted was a conditional pardon

or what it purported and was intended to be a mere parole. It was held to be a parole and within the pardoning power: *Woodward* v. *Murdock,* 124 Ind. 439. In Alabama the constitution gives the executive the power to grant reprieves, commutation of sentence, and pardons, after sentence, except in cases of treason and impeachment. The court said a parole is in the nature of conditional pardon and within the constitutional grant; that while this power cannot be taken away or limited by legislative action, laws may be enacted to render its exercise convenient and efficient: *Fuller* v. *State,* 122 Ala. 32. In Utah the pardoning power is given by the constitution to a board constituted of certain state officials therein named. A law was enacted providing for a board of correction whose duty it was to allow prisoners to go upon parole after they had served the minimum term of their sentence, to remain in the legal custody and under the control of the board, subject at any time to be taken back within the prison. The validity of this law was directly in issue on an application for writ of prohibition, and it was held to be an encroachment upon the pardoning power and therefore unconstitutional: *State* v. *State Board of Correction,* 16 Utah, 478. In Michigan a statute very similar in its principal provisions to our statute was under consideration in *People* v. *Cummings,* 88 Mich. 249, and in a strong well considered opinion the law was held unconstitutional. Therein the court said: "But from the other clauses of the statute it may be inferred, perhaps, that this release is in all cases to be a conditional one, and that it is a system of parole that is contemplated by the law. Yet if it be considered that the only power conferred is a conditional release upon parole, still, if the prisoner keeps his parole, or, rather, if the board are of the opinion that he does, the release is in fact an absolute one. By what refinement of reasoning it can be made to appear that this is not

in effect a pardon of the prisoner, is beyond my comprehension."

Under the provisions of the law in question, a paroled prisoner has his liberty without restrictions other than to keep the conditions of his parole until the expiration of the maximum term of his sentence when he is absolutely free. It is said in *Fuller* v. *State, supra,* that a "parole does not in any wise displace or abridge the sentence. It merely stops its execution for a time only, it may be, or indefinitely, it may prove. It suspends, not destroys."

But the authorities are not in harmony upon this question. In *State* v. *Peters,* 43 Ohio St. 629, a law providing that the prison board of managers may parole convicts was held not an encroachment upon the pardoning power and valid. The court said it was not a commutation, adding that a "commutation is the change of a punishment to which a person has been condemned into a less severe one;" and further said, "It is not a conditional pardon, but the substitution of a lower for a higher grade of punishment." Thus in avoiding a conditional pardon, the court defined a parole to be just what it had in the sentence before correctly given as the definition of a commutation, which, according to all authorities, is within the pardoning power: 4 Black. Com. 401; *Lee* v. *Murphy, supra; Ex Parte* Wells, *supra.*

In *Miller* v. *State,* 149 Ind. 607, in upholding a similar law, the court said, "Nor is it the exercise of the pardoning power. Pardon is remission of guilt; amnesty, oblivion or forgetfulness. The act of the board only shortens the term prescribed by the sentence and leaves the conviction of guilt unaffected." That such is the effect of a full pardon, is not controverted; and that a parole is not a full pardon is not debatable. But in that case, neither commutation, nor a partial,

nor a conditional pardon is considered. Therefore the case is of little force as authority upon the question here involved.

In *George v. Lillard,* 51 S. W. (Ky.) 793, a law which gives the commissioners of the sinking fund, consisting of the governor, auditor, treasurer, secretary of state and attorney general *ex officio,* the power to grant paroles was under consideration, and by a divided court, the law was held not to interfere with the pardoning power vested in the governor. But a strong dissenting opinion was filed in the case, by Judge Guffy (page 1011), holding a parole under the law, to be a conditional or partial pardon, and the law in conflict with the constitutional grant. In carefully examining the two opinions, the reasoning of the latter more fully commends itself to our judgment.

The courts in some of the states, notably in Massachusetts, seem to assume that the law relates to procedure or prison discipline or penal administration: *Murphy v. Commonwealth, supra;* but it matters not under what guise it is attempted to be sustained, the fact remains that if such a parole is within the executive prerogative, it is exclusively so. In view of the disharmony of the authorities, an examination of some of the many conditional pardons which have been granted and judicially held valid, may be helpful in arriving at proper conclusions. Commuting a sentence of death on condition that the prisoner will submit to imprisonment for life, is not uncommon; and the granting of a pardon on condition that the person shall leave the state and never return, has not been infrequent. In *Lee v. Murphy, supra,* the pardon was from a sentence for three years in the penitentiary, on condition that the prisoner would serve a term of imprisonment in the jail for one year; in *Reg. v. Foxworthy,* 7 Mod. 153, the condition was that the person should serve three years on one of the Queen's ships; in *United States v. Klein,* 13 Wall. 128, the

condition was that the person availing himself of the grant should take and keep a prescribed oath; in *Carr* v. *Smith,* 19 Tex. Ct. App. 635, 53 Am. Rep. 395, the conditions were that the pardon should be subject to revocation by the governor whenever it should be determined by him that the convict had violated any of the criminal laws of the state; in Bacon's Abr. tit. Pardon E, that the persons pardoned of felony be bound to their good behavior for seven years; and in *Arthur* v. *Craig, supra,* the conditions were that during the remainder of his term of sentence, the prisoner should refrain from the use of intoxicating liquors as a beverage, use all proper exertion for the support of his mother and sister, and not be convicted of any offense against the criminal laws of the state, with the further condition that upon failure to comply therewith, he should be subject to summary arrest on the warrant of the governor and thereon be remitted to his former custody to serve the remainder of the term of his sentence. Reference might be made to pardons containing still other and different conditions, but it is unnecessary. In the light of the authorities, what good reason can be given why the governor, under his constitutional powers, may not grant a parole with all the conditions intended by the law to be imposed by the board of prison commissioners, with like effect? And if he so did, would the effect be other than that incident to conditional pardons?

The effect of a full pardon, says Blackstone (Book 4, 402), "is to make the offender a new man; to acquit him of all corporal penalties and forfeitures annexed to that offense for which he obtains his pardon; and not so much to restore his former, as to give him new credit and capacity." Nor can the effect be so restricted, even by express terms, as to leave the person with the legal disabilities still resting upon him. Such a restriction would be repugnant to the grant and void;

for although the disabilities are no part of the judgment, they are attached to the convict as the legal marks of infamy. resulting therefrom, and when the offense is pardoned, the judgment with the legal consequences flowing from it, is removed: *People* v. *Pease,* 3 Johns. Cas. 333. Manifestly the converse of this proposition must also be true—until the judgment is removed, the disabilities remain. A convict who fails to comply with the conditions of his pardon is remanded to his imprisonment under the original sentence. If the judgment were removed, there would be nothing to support further execution of the sentence, and the convict could not be thus remanded. The judgment being unremoved, the guilt is not taken away, and the disabilities remain. Such a pardon may, therefore, sooner or later, render the convict a free man, but it is not a remission of his guilt: *People* v. *Bowen,* 43 Cal. 439, 13 Am. Rep. 148; *Carr* v. *Smith, supra.* In like manner when a prisoner is paroled or has received a commutation of his sentence, the judgment against him remains, and neither is a remission of guilt; but each, being a conditional release of a part of the punishment, is a partial conditional pardon, the power to grant which rests exclusively with the executive. The result is that No. 127, laws of 1898, so far as it undertakes to confer upon the board of prison commissioners the power of paroling prisoners, is also unconstitutional and void. Therefore, answering question four submitted, the board of prison commissioners has no authority to grant a conditional discharge nor a parole to a convict in any case.

RUSSELL S. TAFT, Chief Judge.

JOHN W. ROWELL,

JAMES M. TYLER,       Associate

LOVELAND MUNSON,       Judges.

JOHN H. WATSON,

*Start,* Judge, dissents, and *Stafford,* Judge, doubts, on last question considered.

Montpelier, May 29, A. D. 1901.