EARL GUY v. L. F. UTECHT.[1]

December 24, 1943.

No. 33,642.

[1]Reported in 12 N. W. (2d) 753.

*Arthur Le Sueur,* for appellant.

*J. A. A. Burnquist,* Attorney General, *Ralph A. Stone,* Assistant Attorney General, *M. J. Dillon,* County Attorney, and *Howard E. Van Lear,* Assistant County Attorney, for respondent.

YOUNGDAHL, JUSTICE.

On December 12, 1929, Earl Guy, hereinafter called petitioner, was convicted of the crime of bank robbery and sentenced to life imprisonment. The board of pardons commuted his sentence on December 14, 1936, and he was forthwith released. On November 27, 1939, he was charged with the crime of burglary in the third degree, during the perpetration of which he assaulted an officer. In February 1940, he was charged with the crime of first-degree robbery. Subsequent to the filing of these charges, the board of pardons, on February 16, 1940, without notice and hearing, revoked and annulled his commutation of sentence. He was thereupon returned to prison to serve the remainder of his sentence.

Petitioner applied to the district court for a writ of *habeas corpus,* which was issued on December 22, 1942. The application for the writ alleged among other things that the board of pardons was without jurisdiction to revoke or cancel its act of commutation of sentence, since such commutation was absolute, unconditional, a final termination thereof, and in the following language:

"AND WHEREAS, the Board of Pardons has duly heard and considered said application and determined that it ought to be granted, when and if he secures employment, and upon condition that he keep steadily employed thereafter, lead a law abiding life, and for two years report to and counsel with his attorney, Arthur LeSueur, at least once a month, and that said LeSueur report to the Secretary of this board quarterly as to said Guy's conduct, employment and progress.

"Now THEREFORE, the Board of Pardons of the State of Minnesota,

for good and sufficient reasons, as well as those appearing in said application and by virtue of the authority vested in said Board by the Constitution and Laws of the State of Minnesota, does hereby

"COMMUTE the said sentence now in force against the said Earl Guy to expire forthwith."

Supporting the application was a certified copy of the commutation as found in the records of the pardon board and the order of that board revoking such commutation. In the return to the writ, respondent contended that the commutation of sentence was conditional upon petitioner's leading a law-abiding life; that such condition had been violated; and that the action of the pardon board in revoking the commutation was proper. The trial court heard the matter and held the commutation to be unconditional and an absolute termination of sentence, and ordered petitioner released from custody. Respondent then filed a motion to vacate the order discharging petitioner, and in support thereof offered an affidavit wherein it was stated, among other things, that petitioner's exhibit attached to his application for the writ of *habeas corpus,* and purporting to be a true and correct copy of the commutation of sentence executed by the pardon board, was in fact incorrect and false in that the following language appeared in the original commutation of sentence on file in the governor's office and did not appear in petitioner's copy thereof:

"This commutation is granted and accepted upon the express understanding that this board reserves the right to determine whether any condition hereof has been violated and if violation be found to revoke this commutation and to cause the said prisoner to be returned to your institution to serve the remainder of his said sentence."

It was further stated that the original commutation of sentence was expressly accepted with such condition imposed upon petitioner, who subscribed his name thereto; that such acceptance and signature does not appear on petitioner's exhibit. Pursuant to respondent's motion and affidavit, an order was made setting aside

and vacating the former order releasing petitioner. Respondent was permitted to file an amended return to the writ. Thereafter a second hearing was had upon the application and amended return and evidence adduced relating to petitioner's alleged violation of the conditions attached to the commutation of sentence. The court made findings of fact, conclusions of law, and order for judgment adjudging that petitioner's commutation of sentence was conditional; that the conditions thereof had been violated in that he had failed to lead a law-abiding life; and ordering that such commutation of sentence be revoked, the writ discharged, and petitioner remanded to the custody of respondent to serve the remainder of his sentence. From this order petitioner appeals. Thereafter, on August 25, 1943, an order of reference was made by this court appointing the same trial judge as referee to take further evidence. This was done. Since this is an appeal involving a writ of *habeas corpus,* the matter is before this court *de novo* upon the evidence taken at the hearings before the district judge and referee. Minn. St. 1941, § 589.30 (Mason St. 1927, § 9768); State ex rel. Vik v. Sivertson, 194 Minn. 380, 260 N. W. 522.

Petitioner bases his right to be released from the custody of respondent upon the following grounds: (1) That the commutation did not expressly reserve to the pardon board the right to determine whether a condition had been broken; (2) that, in any event, the pardon board was without authority to revoke the commutation without notice and hearing; and (3) that petitioner was entitled to a hearing before the pardon board; that the hearing before the district court in the *habeas corpus* proceedings did not satisfy the requirements of due process, and that, since the commutation was revoked without a hearing before the board, it was unlawful and void, and therefore petitioner should be discharged.

■ Minn. Const. art. 5, § 4, provides, among other things, that the board of pardons, whose powers and duties shall be defined and regulated by law, shall have power to grant pardons and reprieves after conviction for offenses against the state, except in cases of impeachment. Under Minn. St. 1941, § 638.01 (Mason St. 1927,

§ 10779), the power to grant pardons, reprieves, and commutations of sentences is vested in the board of pardons, composed of the governor, the chief justice of the supreme court, and the attorney general. By authority of statute, the board of pardons may grant a conditional pardon, *Id.* § 638.02 (§ 10780). The power to commute a sentence is a part of the pardoning power and may be exercised under a general grant of that power. The general power necessarily contains in it the lesser power of remission or commutation. If the whole offense may be pardoned, *a fortiori,* a part of the punishment may be remitted or the sentence commuted. Biddle v. Perovich, 274 U. S. 480, 47 S. Ct. 664, 71 L. ed. 1161, 52 A. L. R. 832; Jamison v. Flanner, 116 Kan. 624, 228 P. 82, 35 A. L. R. 973; 39 Am. Jur., Pardon, Reprieve and Amnesty, p. 558, § 63. The statutory authority, therefore, to grant conditional pardons carries with it the power to grant conditional commutations. The principles enunciated in the various cases discussed herein with reference to conditional pardons have equal application to conditional commutations. Since conditional pardons require acceptance by the prisoner, it necessarily follows that conditional commutations also require acceptance. 39 Am. Jur., Pardon, Reprieve and Amnesty, p. 561, § 66. Petitioner's acceptance of the commutation is undisputed in this case.

In determining whether the commutation in the case at bar contained the reservation clause giving the pardon board the right to revoke upon a determination that a condition thereof had been violated, we must decide which document was the original record of commutation. That question arises because the record of the commutation kept in the office of the pardon board at the time a certified copy thereof was procured by petitioner did not include the reservation clause. The record indicates that it was the practice to stamp this clause in the form contained in the book provided for that purpose in the office of the pardon board, and that frequently this record would not be completed until some time after the commutation or pardon had been granted. When petitioner's attorney obtained a certified copy of the record of this

commutation as kept in the pardon board office, the stamp apparently had not yet been placed in the book, and thus it appeared that there was not a reservation clause in the commutation. This was one of the reasons why the lower court released petitioner from custody at the first hearing. All parties were under the impression that the commutation did not contain the reservation clause. This difficulty arose because a certified copy of the original record of the commutation had not been obtained. Minn. St. 1941, § 638.07 (Mason St. 1927, § 10785), requires that the board of pardons shall keep a record of every pardon, reprieve, or commutation of sentence, and further provides: "The records and all the files shall be kept and preserved in the office of the governor."

The testimony indicates that the files in the pardon board office contained for the most part only memoranda and working material to enable the department to perform its functions and were not considered to be the original records. Testimony offered by those employed in the governor's office in charge of the files is to the effect that the original instruments were received by that office and preserved in a permanent file, pursuant to the provisions of the statute. Thus the pardon board was complying with the mandate of the law in keeping a record of pardons and commutations in the office of the governor. The document produced from the records in the governor's office, which is before us as respondent's exhibit B, is the only one bearing the original signatures of the three members of the board of pardons and the only one which bears the signature of petitioner showing his acceptance of the same. It is obviously the original record of the commutation of sentence, and we so hold. When petitioner produced a certified copy of the record in the pardon board office, he was producing secondary evidence. The best-evidence rule requires proof of a pardon by producing the pardon itself or a certified copy thereof. 39 Am. Jur., Pardon, Reprieve and Amnesty, p. 581, § 98.

Petitioner further asserts, assuming that the document filed in the governor's office is the original commutation, that it did not contain the reservation clause when it was accepted by him. He did not

testify at the hearing, but bases his claim upon expert testimony to the effect that from the folds of the document and positions of the letters the conclusion is inescapable that the clause was not in the commutation when it was executed by members of the pardon board and forwarded on to the penitentiary for the signature and acceptance of petitioner, but must have been inserted at some time later. We have given careful consideration to this testimony. It is necessarily somewhat speculative in its character and loses its probative force when the facts indicate a contrary result. After a commutation of sentence has been executed by the pardon board, the usual procedure is to forward the original commutation, signed by all members of the pardon board and attested by the secretary, to the proper official (in this case respondent), who thereupon makes three copies of the document, one for his records, one for the clerk of court of the district where the prisoner was originally convicted, and one for the prisoner. After the signature of the prisoner is procured accepting the commutation, the original is returned by the warden to the governor's office and constitutes the permanent record thereof. The copy of the commutation sent to the clerk of the district court and the copy retained by the warden were produced at the hearings and are before us, and both contain the reservation clause. The copy given to the prisoner was not produced. It seems clear to us that the reservation clause must have been in the original commutation forwarded to the warden; otherwise, in making the copies, it would not have been included therein, since the original was used in preparing the copies. This is further fortified by oral testimony, but we hold that the evidence is amply sufficient to prove that the reservation clause was in the commutation without a consideration of such testimony.

Petitioner cannot assert that the reservation clause was not in the commutation at the time it was executed by the pardon board and accepted by him, because by so doing he is collaterally attacking an original public record. He urges that respondent, in producing and relying upon the record of commutation as found on file in the governor's office, is in effect making a collateral attack upon the

commutation. The fallacy of petitioner's position is his erroneous assumption as to what constitutes the original record. Holding as we do, that the record in the governor's office is the original, it follows that petitioner's attempt now to question it constitutes a collateral attack. A public record required to be kept is not open to collateral attack. The verity of such a record is conclusive. 45 Am. Jur., Records and Recording Laws, p. 423, § 9.

■ We now consider the authority of the pardon board to revoke the commutation without notice and hearing. It is uniformly agreed that the pardon board may extend its mercy on such terms as it sees fit, and consequently may annex to the pardon any condition, either precedent or subsequent, or both, on the performance of which the validity of the pardon will depend, provided such conditions are neither immoral, impossible, nor illegal. The prisoner may accept or reject it at his will; but, having once accepted it, he becomes bound by all attaching conditions. State ex rel. O'Connor v. Wolfer, 53 Minn. 135, 54 N. W. 1065, 19 L. R. A. 783, 39 A. S. R. 582; Arthur v. Craig, 48 Iowa 264, 30 Am. R. 395; Ex parte Davenport, 110 Tex. Cr. 326, 7 S. W. (2d) 589, 60 A. L. R. 1403. Clearly, the commutation in the instant case was conditional. It provided, among other things, that petitioner lead a law-abiding life and that the pardon board might reserve the right to revoke upon a breach of such conditions. A commutation with such conditions attached is valid. Ex parte Houghton, 49 Or. 232, 89 P. 801, 9 L.R.A.(N.S.) 737, 13 Ann. Cas. 1101; 39 Am. Jur., Pardon, Reprieve and Amnesty, pp. 561-563, §§ 67-70. Petitioner's position that the board was without authority, in any event, to revoke the commutation without notice and hearing is a new question in this state, although this court forecast its position on the issue in the *obiter* language of Mr. Justice Mitchell in State ex rel. O'Connor v. Wolfer, *supra,* as follows (53 Minn. 139, 54 N. W. 1066, 19 L. R. A. 783, 39 A. S. R. 582) :

"* * * As a pardon is wholly a matter of mercy, we are not prepared to hold that the legislature may not provide that in case of

a conditional pardon the governor may, even without giving the person an opportunity to be heard, determine whether the condition has been violated, and, if he determines that it has, remand him to the state prison; and it may be that, even in the absence of any statute, the governor would have the right to insert such a provision or condition in the pardon itself, for it might well be argued that the statute in the one case, and the express provision of the instrument itself in the other, constituted a condition to which the prisoner voluntarily subjected himself by the acceptance of the pardon."

In the Wolfer case there was not an express reservation in the pardon; and, absent a statutory provision to that effect, the court properly held that a notice and hearing was necessary. The overwhelming weight of authority, however, in other jurisdictions is to the effect that a commutation conditioned in terms similar to the instant case gives to the prisoner no right to notice and hearing as a condition precedent to his arrest and recommitment. Arthur v. Craig, 48 Iowa 264, 30 Am. R. 395, and Ex parte Houghton, 49 Or. 232, 89 P. 801, 9 L.R.A.(N.S.) 737, 13 Ann. Cas. 1101, *supra;* Spencer v. Kees, 47 Wash. 276, 91 P. 963; Fuller v. State, 122 Ala. 32, 26 So. 146, 45 L. R. A. 502, 82 A. S. R. 17; State ex rel. Brown v. Mayo, 126 Fla. 811, 171 So. 822; State ex rel. Bedford v. McCorkle, 163 Tenn. 101, 40 S. W. (2d) 1015; Muckle v. Clarke, 191 Ga. 202, 12 S. E. (2d) 339; Ex parte Horine, 11 Okl. Cr. 517, 148 P. 825, L. R. A. 1915F, 548; Ex parte Paquette, 112 Vt. 441, 27 A. (2d) 129; Annotation, 60 A. L. R. 1421. It is immaterial that the reservation clause is silent as to notice and hearing. State v. Horne, 52 Fla. 125, 42 So. 388, 7 L.R.A.(N.S.) 719; State ex rel. Davis v. Hunter, 124 Iowa 569, 100 N. W. 510, 104 A. S. R. 361; In re Patterson, 94 Kan. 439, 146 P. 1009, L. R. A. 1915F, 541; Ex parte Davenport, 110 Tex. Cr. 326, 7 S. W. (2d) 589, 60 A. L. R. 1403, and Ex parte Horine, 11 Okl. Cr. 517, 148 P. 825, L. R. A. 1915F, 548, *supra;* In re Conditional Discharge of Convicts, 73 Vt. 414, 51 A. 10, 56 L. R. A. 658.

The rationale of the cases holding notice or hearing unnecessary is that, since a pardon is an act of grace and not something which the prisoner can demand, the revocation thereof does not deprive him of any legal right. Upon its revocation, the status of the prisoner must be regarded as being the same as it was before the pardon was granted. He has been at liberty by virtue of the clemency of the board of pardons, which he accepted in writing upon the conditions stated in the pardon, among which was the reservation by the board of the right to determine for itself whether the conditions had been broken, and, if so, to revoke the pardon.

Petitioner contends, however, assuming his commutation of sentence was conditional and despite the fact that the commutation contained the reservation clause, that a denial to him of notice and hearing violates his constitutional rights under the Fourteenth Amendment. It has been held that a revocation of a conditional pardon without notice or hearing where there has been a reservation clause accepted in writing does not violate any constitutional right of the prisoner. Ex parte Ridley, 3 Okl. Cr. 350, 106 P. 549, 26 L.R.A.(N.S.) 110; Fuller v. State, 122 Ala. 32, 26 So. 146, 45 L. R. A. 502, 82 A. S. R. 17, and Ex parte Paquette, 112 Vt. 441, 27 A. (2d) 129, *supra*. Here it must be remembered that a breach of the conditions of the pardon is not a new and separate offense unless made so by statute. It is not a violation of the constitutional guarantees if there is not a second trial or conviction of the prisoner for the original offense. He had already been tried and convicted of the crime for which he was conditionally pardoned. If the condition is violated, the pardon becomes void and he is remanded to serve his original sentence and not a new sentence for the crime of which he had been already convicted. State ex rel. O'Connor v. Wolfer, 53 Minn. 135, 54 N. W. 1065, 19 L. R. A. 783, 39 A. S. R. 582, *supra*. The prisoner's return to prison under the original sentence is not violative of the organic guarantees of trial by jury and other constitutional safeguards, for the reason that the person seized has already been dealt with in a constitutional way. He has been confronted with his accusers and the witnesses against

him, tried by a jury of his peers, secured to him by the constitution, by them convicted of a crime (unless a plea of guilty has been entered), and sentenced to punishment therefor. In respect to that crime and his attitude before the law after conviction, he is not entitled to invoke the protection to which an ordinary citizen is entitled, but he is an individual at liberty by grace of the pardoning power and not entitled to his freedom after he has breached the conditions upon which that grace was extended to him. Ex parte Houghton, 49 Or. 232, 89 P. 801, 9 L.R.A.(N.S.) 737, 13 Ann. Cas. 1101, and Ex parte Davenport, 110 Tex. Cr. 326, 7 S. W. (2d) 589, 60 A. L. R. 1403, *supra.* We do not overlook the fact that there is some authority to the contrary. People v. Moore, 62 Mich. 496, 29 N. W. 80; Fleenor v. Hammond (6 Cir.) 116 F. (2d) 982, 132 A. L. R. 1241. In the Moore case the authority to rearrest upon information for violation of the conditions of a pardon was reserved in an agent of the penitentiary wherein petitioner had been incarcerated. We believe this case is clearly distinguishable from others wherein the power to revoke has been reserved to the granting body, such as the chief executive of the state or a pardon board constituted for that purpose, who presumably have in mind the general welfare of the state and the right of its citizens to the equal protection of the laws. We do not attempt to distinguish the Fleenor case, but, with due deference to the opinion of the court in that case, we believe it to be the better rule, when a prisoner has been conditionally pardoned with authority to revoke expressly reserved by the pardoning authority, to hold that due process is not denied by recommitment without notice and hearing. In Ex parte Paquette, 112 Vt. 441, 27 A. (2d) 129, *supra,* the rule in the Fleenor case was not followed, and we do not follow that rule in the instant case.

■ In the absence of a statute expressly providing therefor, or a reservation of authority in the pardoning power by the instrument itself, we reaffirm the rule laid down by this court in State ex rel. O'Connor v. Wolfer, 53 Minn. 135, 54 N. W. 1065, 19 L. R. A. 783, 39 A. S. R. 582, *supra,* and follow the majority of state courts, to

the effect that upon a charge of violating the provisions of a con-ditional pardon the accused is entitled to a judicial inquiry into the breach. This may be had upon a writ of *habeas corpus*. Ex parte Davenport, 110 Tex. Cr. 326, 7 S. W. (2d) 589, 60 A. L. R. 1403, *supra;* Ex parte Alvarez v. State, 50 Fla. 24, 39 So. 481, 111 A. S. R. 102, 7 Ann. Cas. 88; Ex parte Webbe, 322 Mo. 859, 30 S. W. (2d) 612; Ex parte Strauss, 320 Mo. 349, 7 S. W. (2d) 1000; State v. Horne, 52 Fla. 125, 42 So. 388, 7 L.R.A.(N.S.) 719; 20 R. C. L. 573.

Petitioner makes the novel claim that the hearing before the district court and the consideration by us *de novo* is not the type of hearing to which he was entitled, but that the matter should have been heard before the pardon board and that the revocation without such hearing was null and void despite the subsequent hearings in the trial court and this court. The authorities which petitioner cites do not sustain his position. Our own court has held to the contrary. State ex rel. O'Connor v. Wolfer, *supra*. The courts of other jursidictions do not sustain his contention. Ex parte Davenport, *supra;* State ex rel. Bedford v. McCorkle, 163 Tenn. 101, 40 S. W. (2d) 1015; Muckle v. Clarke, 191 Ga. 202, 12 S. E. (2d) 339; Fleenor v. Hammond (6 Cir.) 116 F. (2d) 982, 132 A. L. R. 1241, *supra*. When a hearing is necessary it need not be in the nature of a formal trial. Petitioner is not entitled to a jury trial as a matter of right except on the question of identity, which is undisputed here. It is competent for the prisoner to present any facts constituting an excuse for nonperformance of the strict terms of the conditions, and if the court is of the opinion that a lawful excuse has been presented he should be discharged; otherwise he should be remanded to prison. If found to be the same person, no other formalities are required in returning him to imprisonment than were required when he was brought up for original sentence. State ex rel. O'Connor v. Wolfer, *supra*. To the same effect is Fleenor v. Hammond, *supra*. Due process is satisfied if there is a reasonable opportunity extended to the prisoner to explain the accusation that he has violated the conditions of the pardon.

■ Assuming that petitioner was entitled to a hearing in the instant case, upon the record before us he is not entitled to his freedom. He has been granted two hearings before the trial court, in neither of which he made any offer to explain the accusations against him. Despite this, we have carefully studied the record with relation to his violations and find that it conclusively establishes the fact that he has failed to lead a law-abiding life since the conditional commutation was granted. In reaching this conclusion, we have not considered respondent's exhibit 11, since the evidence is amply sufficient without it to establish the fact that petitioner has committed two serious offenses and participated in the planning of two others that did not come to pass.

On November 27, 1939, the River Lake Motors Company was burglarized by petitioner and another. While attempting to escape he was shot. That evening police officers questioned him at home. He was in bed and in great pain. His garments disclosed the bullet hole. He was removed to the hospital, and the X-rays taken at that time revealed the bullet lodged in petitioner's pelvis. Later X-rays taken by the prison authorities reflected the same condition.

In February 1940 petitioner was accused of taking part in the Hans Rosacker robbery. The evidence is overwhelming that he drove the holdup automobile and shared in the proceeds of the crime. With his associates in crime he planned to burglarize two other business establishments, but these plans failed to materialize.

Petitioner alleges in his application for the writ that he has complied with the conditions of his commutation of sentence, but upon the hearing he made no offer to refute the charges against him. He had ample opportunity to do so.

We are convinced that the trial court reached the correct conclusion in discharging the writ and remanding petitioner to the custody of respondent to serve the remainder of his sentence.

Affirmed.

Mr. Chief Justice Henry M. Gallagher, having been a member of the board of pardons when the conditional pardon was revoked, took no part.

MR. JUSTICE PETERSON, having been a member of the board of pardons when the conditional pardon was granted to petitioner, took no part.