Tolman, J.
 

 The state board of law examiners has recommended to this court the disbarment of the respondent upon the ground and for the reason that, as shown by a certified copy of the judgment introduced in evidence on the hearing before the board, he was heretofore convicted in the United States district court for Western Washington, northern division, of the violation of § 37 of the penal code of the United States by conspiring with others to violate the Federal act of October 28, 1919, and that he was sentenced to im
 
 *608
 
 prisonment in the United States penitentiary for a term of two years at hard labor and to pay a fine of $500 and the costs of prosecution on count one of the indictment, and likewise sentenced to one year at hard labor on count two of the indictment. The action of the board is based upon that part of Rem. Comp. Stat., § 139-14, which reads:
 

 “An attorney or counselor may be disbarred or suspended for any of the following causes arising after his admission to practice: 1. His conviction of a felony or misdemeanor involving moral turpitude, in which case the record of conviction shall be conclusive evidence.”
 

 Respondent does not deny the record, but contends that, since the statute reads “may be disbarred,” we may and ought to go behind the record of conviction and examine into the proceedings in the Federal court to ascertain the degree of guilt and determine whether he ought to be disbarred, suspended or merely censured. But while the statute does use the word “may” in the connection indicated, it further provides that “the record of conviction shall be conclusive evidence.” The purpose of this last quoted clause is apparent. We have no power to review the judgments of the Federal courts and must accept them as binding on us. The legislature, realizing the futility of going behind the record of conviction in any such case, made that record conclusive evidence and we must accept it as such.
 

 The only other question raised is, Does the crime of which respondent was convicted involve moral turpitude? There seems to be some conflict of authority upon the question of a mere violation of the Federal prohibition law being an offense involving moral turpitude, but here the respondent was convicted of a conspiracy which would be a gross misdemeanor under
 
 *609
 
 our state laws, and which the late Chief Justice Taft characterized as “a conspiracy of amazing magnitude to import, possess and sell liquor unlawfully.”
 
 Olmstead v. United States,
 
 277 U. S. 438, 72 Law Ed. 944.
 

 We have heretofore had occasion to discuss this matter of moral turpitude in connection with disbarment proceedings in the case of
 
 In re Hopkins,
 
 54 Wash. 569, 103 Pac. 805. It was there said:
 

 “These acts upon which the conviction of appellant was had in the Federal court constitute a grave offense against the pension laws of the United States, punishable by a fine not exceeding $500, or by imprisonment for a term of not more than five years. U. S. Rev. Stats. § 4746. The gravity of the offense is thus indicated, though it may be conceded this does not determine the question of its involving moral turpitude. That question, after all, must be determined from the inherent immoral nature of the act, rather than from the degree of punishment which the statute law imposes therefor, though the latter may be some indication of the public conscience relating thereto. Bouvier, in his Law Dictionary, says: ‘Everything done contrary to justice, honesty, modesty, or good morals is said to be done with turpitude;’ while Anderson’s Dictionary of the Law defines turpitude as, ‘Doing a thing against good morals, honesty or justice; unlawful conduct; infamy.’ The supreme court of Pennsylvania, in the case of Beck v. Stitzel, 21 Pa. St. 522, 524, refers to moral turpitude in this language:
 

 “ ‘This element of moral turpitude is necessarily adaptive; for it is itself defined by the state of public morals, and thus far fits the action to be at all times accommodated to the common sense of the community. ’
 

 “See, also,
 
 Ex parte Mason,
 
 29 Ore. 18, 43 Pac. 651, 54 Am. St. 772;
 
 In re Coffey,
 
 123 Cal. 522, 56 Pac. 448;
 
 In re Kirby,
 
 10 S. D. 322, 39 L. R. A. 856; Newell, Slander & Libel, 98.
 

 “Now, do the acts found against the appellant, and for which he was convicted in the Federal court, violate the commonly accepted standard of good morals, honesty, and justice? Suppose we measure his con
 
 *610
 
 duct in this regard, not by any puritanical standard, but by the standard of right conduct generally prevailing among our people, uninfluenced by the fact that the statute law also punishes such conduct as a crime. What, then, is the answer to the question whether or not such acts involve moral turpitude? It seems to us that there can be but one answer, and that is against the contention of the learned counsel for appellant.”
 

 See, also,
 
 In re Comyns,
 
 132 Wash. 391, 232 Pac. 269.
 

 Using here the standard so clearly defined in the language just quoted, we are constrained to hold that, when one conspires with others to violate and set at naught the laws of the United States, especially for gain and profit, that act violates “the commonly accepted standard of good morals, honesty, and justice,” and must be held to be bad morally, dishonest, and unjust, and therefore that the respondent was convicted of an offense involving moral turpitude.
 

 It is the judgment of this court that respondent Jerrie L. Pinch be disbarred from the further practice of the law and that his name be stricken from the roll of attorneys.
 

 All concur.