[No. C. D. 1590. *En Banc.* December 8, 1933.]

*In the Matter of the Proceedings for the Disbarment of* C. D. LILIOPOULOS.[1]

*The Attorney General, Lester T. Parker,* and *O. B. Thorgrimson,* for the state.

*Carkeek, McDonald & Harris* and *C. D. Liliopoulos,* for respondent.

MAIN, J.—This is a disbarment proceeding.

C. D. Liliopoulos was admitted to the bar in this state June 17, 1913. April 7, 1931, he was found guilty by the verdict of a jury of the crime of grand larceny, and was sentenced to the state penitentiary "for the term of not less than one (1) year and not more than fifteen years. Sentence to be suspended pending the further order of the court." From the judgment and sentence, he appealed (*State v. Liliopoulos,* 165 Wash. 197, 5 P. (2d) 319), and the judgment was affirmed.

Rem. Rev. Stat., § 139-14, provides that an attorney may be disbarred or suspended

". . . for any of the following causes arising after his admission to practice: 1. His conviction of a felony or misdemeanor involving moral turpitude, in which case the record of conviction shall be conclusive evidence."

It will be observed that the statute provides for a disbarment or suspension when an attorney has been convicted of a felony or misdemeanor involving moral turpitude. There can be no question but that the offense of grand larceny, of which Mr. Liliopoulos was convicted, involved moral turpitude. *In re Hopkins,* 54 Wash. 569, 103 Pac. 805; *In re Comyns,* 132 Wash. 391, 232 Pac. 269.

The first inquiry must be directed to the effect to be given to that provision of the statute which makes

the record of conviction conclusive evidence. That question was presented in the case of *In re Finch,* 156 Wash. 609, 287 Pac. 677, and it was held that the court would not go behind the record of conviction. Upon the question, it was said:.

"Respondent does not deny the record, but contends that, since the statute reads 'may be disbarred,' we may and ought to go behind the record of conviction and examine into the proceedings in the Federal court to ascertain the degree of guilt and determine whether he ought to be disbarred, suspended or merely censured. But while the statute does use the word 'may' in the connection indicated, it further provides that 'the record of conviction shall be conclusive evidence.' The purpose of this last quoted clause is apparent. We have no power to review the judgments of the Federal courts and must accept them as binding on us. The legislature, realizing the futility of going behind the record of conviction in any such case, made that record conclusive evidence and we must accept it as such."

In that case, it is true the conviction had been in the Federal court, but a judgment of that court can be no more conclusive than a judgment of the superior court of this state which has been affirmed by this court upon appeal.

In the case of *Ex Parte Mason,* 29 Ore. 18, 43 Pac. 651, 54 Am. St. 772, with reference to a statute similar to the one here involved, it was held that the record of conviction was conclusive evidence thereof, but that the court could go behind the record for the purpose of determining the extent or severity of the punishment to be administered. The rule of that case is not in harmony with the holding of this court in the *Finch* case, and, of course, is not controlling. We think that the view expressed in the *Finch* case is correct, and we adhere to it.

There has been some discussion to the effect that the

statute, above set out, invades the inherent power of the court to disbar attorneys, and it appears to be assumed that such invasion was approved in the *Finch* case. While that case gives effect to the rule of the statute, we find nothing in the opinion from which the inference should be drawn that the inherent power of the court to disbar may be invaded by a legislative enactment. Recognizing the rule of the statute and giving it effect, does not militate against the inherent power of the court.

The next question is the effect that the court will give to the fact that the trial court suspended the sentence in the criminal action. It will be observed that the sentence was suspended ''pending the further order of the court.'' If the court should dismiss the proceedings because the sentence had been suspended, and thereafter for some reason the suspension of the sentence should be revoked and the defendant required to serve the same, the situation would be somewhat anomalous. There is a close analogy between a suspended sentence and a conditional pardon. Either may be revoked and the defendant required to serve the sentence.

In *In re Sutton*, 50 Mont. 88, 145 Pac. 6, Ann. Cas. 1917A, 1223, an attorney had been convicted of a crime involving moral turpitude, and thereafter was granted a conditional pardon by the governor, which was subject to revocation. A disbarment proceeding was begun against the attorney, and it was held that, in determining the punishment, the matter of the conditional pardon could not be taken into consideration. In the opinion in that case, it was said:

''The act of the governor, as expressed in the order *supra*, though designated by him as a pardon, is closely assimilated to a parole, which he also has the authority to grant under certain restrictions. (Rev. Codes, secs. 9573-9575.) A parole does not operate to wipe out

the judgment of conviction but merely suspends its operation by remitting, for the time being, the confinement and hard labor, until the end of the term, or until an unconditional pardon is granted. Until one of these events occurs, the offender is subject, upon a violation of any of the conditions, to be taken into custody and be held to suffer actual imprisonment as though the parole had not been granted. The same rule applies here. The imposition of the conditions implies the existence of a judgment; that it is just and regular; that its execution has been by the act of the governor merely deferred to a future time, to be determined by Mr. Sutton's failure to perform the obligations he has assumed by his acceptance of it. Whenever he transgresses any of the restraints imposed upon him, he will occupy the position of an escaped convict and be subject to be dealt with accordingly. (*Fuller v. State, supra* [122 Ala. 32, 82 Am. St. Rep. 1, 45 L. R. A. 502, 26 South. 146].) This was the rule at common law (Bacon's Abr., Title 'Pardon,' E), and it has been recognized and adopted generally in this country. (*In the Matter of Convicts, supra* [73 Vt. 414, 51 Atl. 10]; *Arthur v. Gregg, supra* [48 Iowa 264, 30 Am. Rep. 395]; *Fuller v. State, supra; State v. Wolfer,* 53 Minn. 135, 39 Am. Rep. 582; 19 L. R. A. 783, 54 N. W. 1065; *Kennedy's Case,* 135 Mass. 48). The pardon being in the nature of a deed, it must be accepted. (*United States v. Wilson,* 7 Pet. 150, 8 L. Ed. 640.) Having been accepted, all the conditions of it not open to any of the objections above noted become binding. (*In re Ross,* 140 U. S. 453, 35 L. Ed. 581, 11 Sup. Ct. Rep. 897.)

"For the purpose of this proceeding, therefore, the judgment in *State v. Sutton* is a valid, subsisting judgment, notwithstanding the order of the governor. It is true that, upon expiration of Sutton's term of service, the pardon will become absolute. At least this seems to have been the purpose of the governor. But this does not relieve this court from the duty imposed upon it by the statute. It is left without discretion, and hence must make the order of disbarment. To give the pardon the effect which Mr. Sutton insists should be accorded to it might lead to consequences

which would prove embarrassing. If Mr. Sutton should transgress any of the restraints imposed upon him, or his conduct, though not directly violative of any of them, should, in the opinion of the board of pardons, be such as to justify his return to prison, the pardon would be annulled. The result would be that Mr. Sutton would be a member of the bar in good standing, notwithstanding his status as such would, in the eye of the law, have ceased to exist.''

In determining whether an order of disbarment should be entered in this case, the court should not, as we view it, take into consideration the fact that the sentence had been suspended.

Cases have been cited upon the question of the effect to be given to an absolute pardon, but it is not necessary to enter upon a discussion of that question, because the suspending of a sentence is not the equivalent of an absolute pardon.

It is the judgment of this court that C. D. Liliopoulos be disbarred from the further practice of the law, and that his name be stricken from the roll of attorneys.

BEALS, C. J., MITCHELL, TOLMAN, MILLARD, STEINERT, BLAKE, and GERAGHTY, JJ., concur.

HOLCOMB, J. (dissenting)—The law is as held in the prevailing opinion, but the court has a wide latitude in disposing of such cases. In my opinion, this court could, and should, consider the circumstance that the trial judge in the former prosecution, in his judgment, thought the accused probably technically guilty but not a real criminal, and therefore suspended sentence. In my opinion, suspension for a period of two or three years would answer every purpose, to the public, the profession, and the court.