## SPEER v. STATE.
### No. 10412.

Court of Civil Appeals of Texas. Galveston.

Nov. 4, 1937.

Rehearing Denied Nov. 24, 1937.

J. S. Bracewell, of Houston, and M. E. Gates, of Huntsville, for appellant.

Dan W. Jackson, Cr. Dist. Atty., and Spurgeon E. Bell, Asst. Cr. Dist. Atty., both of Houston, for the State.

. GRAVES, Justice.

The following statement of the nature and result of the suit is in substance taken from appellant's brief:

This is an appeal from ,the .judgment of the Eleventh district court of Harris county, canceling the license to practice medicine of Dr. Glover Speer. In February, 1929, an Italian from a ship in the port of Houston, purporting to bring greetings from one of Dr. Speer's friends in Italy, put a package in the back seat of his automobile; which Dr. Speer at that time thought was whisky. On arriving home and taking the package out, he discovered that it was morphine and carried it, the next day, to his office. Later in the week he paid the Italian $40 for it. From this morphine he sold

one "Barney" morphine approximately fifteen times, charging him five or ten dollars for each sale, because he (Dr. Speer) needed the money. He knew when he appropriated and paid for the morphine that it had been smuggled into the United States.

After his arrest by federal officers, he made and signed the following confession.

"I, Glover Speer, M. D., being just duly sworn, deposes and says:

"That I make this statement of my own free will, without threats or promises and that I have been placed under arrest by the Federal Officers and warned that anything I might say can be used against me and do not have to talk but wish to make the following statement:

"I was born December 10th, 1880, at Lovelady, Texas. About February 1929, Ghio Orchito, second mate on S. S. Marino and lives at Riva, Fugoso, (Genoa, Italy), called me on the telephone and said he was a friend of Capt. Graffina a personal friend of mine fom Genoa, Italy, and stating that he would like to talk to me and if I would meet him down to his boat which was in port at Houston. After a general personal conversation when I met him at his request, he stated to me that he had something for me and said the next time I came down to the boat that he would give it to me. The following night he came and met me and placed a package in the back seat of my auto. He and I got in the car and rode around for about forty minutes and then I took him to the Ship Channel and returned home. I then opened the package thinking it was liquor, but discovered it was morphine so I took it to my mother's home, 3919 Harrisburg Blvd., and left it there for the night and the next day I brought it to my office. The S. S. Marino was in port for about one week and after the delivery of the morphine, he got in touch with me and I met him again and we discussed the morphine and he wanted to know if I could not handle a large quantity of these drugs. I told him at first that it was too dangerous. He insisted that we could both make money off of these drugs, and said he would bring some more from Italy on his next trip if I would notify him and could handle it. At this time he wrote his name in my note book, so I would know where I might get in touch with him if I wanted some more. And I paid him forty dollars for the morphine he put in my car. I am not positive of the date that this transaction took place, but it was the time before the last landing at Houston of this boat. But the last landing he came to me and asked me again about handling morphine in large quantities and said for me to write him if I decided to handle it. But for me to write at the address given me before the 18th of April, 1929.

"After I received this morphine from Ghio Orchito an addict known to me as Barney came to my office and asked for morphine and I started to sell him the drugs I received from the Italian. I have sold him morphine on an average of three times a week since about April 1st, 1929. I would say that I did not sell him morphine more than about fifteen times during the period that I have had these drugs. I charged him five or ten dollars for each sale. I know that this was against the law and the only excuse that I can offer for selling morphine was that I needed the money. The drugs I sold to the addict I knew was smuggled off of the boat into the United States. The drugs I bought on my order forms was used in my legitimate practice of my profession. On April 24th, 1929, I sold the man Barney some of this smuggled morphine and also sold him some on April 23rd, 1929. On the 24th day of April after selling these drugs the Narcotic Officers came to my office and placed me under arrest. And upon searching me they showed me the numbers of three five dollar bills they had marked on a piece of paper and let me compare them with the money they took from my person. They also showed me the bottle of morphine that I had just sold to the addict Barney.

"I have read the above statement consisting of four pages and it is true to the best of my recollection.

"Glover Speer, M. D.
"No. 609 Kress Bldg.,
"Houston, Texas."

He also sold 2½ grains of this smuggled morphine to J. W. Harris.

(Having prepared the foregoing portion of this opinion, Chief Justice Pleasants became physically indisposed and retired to his home; his associates have pleasure in completing and ordering it filed for him.)

The appealed from judgment of cancellation had been rendered, not alone upon a jury's verdict in response to special issues, but also upon the court's additional findings upon the law and the evidence; the evidence was unilateral, that is, it came from the appellee State, the appellant having presented no evidence whatever, contenting himself with a motion for judgment in his

own favor at the conclusion of that for the State, which the court overruled.

The evidence so offered by the State embraces these features:

(1) An agreed stipulation of counsel for both sides to the effect that the appellant had been a duly licensed and practicing physician in Harris county; that the above-quoted confession had been duly executed by him and witnessed by H. B. Westover, federal narcotic agent, on February 24 of 1929; that he was the same person who had been indicted and convicted in the United States, District Court for the Southern District of Texas on February 22 of 1930, in cause No. 3906, of violating the Harrison Narcotic Act, known as articles 691–700, inclusive, title 26, United States Code (26 U.S.C.A. §§ 1040–1054, 1383–1391), from which conviction he had not appealed but had served the penitentiary sentence imposed upon him in consequence thereof; further, that this suit for cancellation of such license to practice medicine had been duly brought by the State of Texas on relation of its State Board of Medical Examiners, pursuant to the ususal and necessary order thereof.

(2) Certified copies of the indictment and of the judgment of conviction against the appellant in such cause No. 3906 in the United States District Court, as described in paragraph (1) hereof, supra;

(3) Detailed testimony, under both direct and cross examinations of counsel for both sides, of Drs. J. H. Page and James Greenwood, two duly qualified medical experts, with reference to the effect of morphine upon human beings and what quantity thereof was recognized by the medical profession as being proper to be prescribed for people in certain detailed circumstances.

The appellee State's suit against the appellant for such cancellation of his license had been filed in the trial court as a civil proceeding, the gravamen of its declaration in support thereof being that he had been so indicted and convicted in the United States District Court and had served his penitentiary sentence for the violation of the Harrison Narcotic Act, which constituted a conviction for a crime both of the grade of a felony and involving moral turpitude, contrary to the statutes of the State of Texas appertaining to such offenses, that is, R.S. Arts. 4505 and 4506, wherefore it prayed for the cancellation and revoking of such medical license.

In response to the pleadings and evidence so grounded, the jury had found, upon the issues properly submitted to it, in substance as follows:

That appellant had sold Barney Young morphine on each of the days of April 23 and 24 of 1929, that on those days Barney Young was a habitual user of morphine, which fact the appellant knew at the time, and that Barney Young had not then been under appellant's treatment in the regular practice of his profession as a physician or doctor.

The court's decree awarding the cancellation complained of is thus couched:

"It appears to the Court further that the defendant has been convicted of a crime of the grade of felony in the United States District Court for the Southern District of Texas, Houston Division, in cause No. 3906, styled: The United States v. Glover Speer, and it further appears to the Court that such conviction was a conviction for a crime involving moral turpitude; and it further appears to the Court that the defendant herein, as evidenced by the said conviction in said Federal Court, and under the facts as determined by the jury in this cause, was guilty of acts involving moral turpitude and that such acts were the basis of his conviction in said cause in said Federal Court.

"It is therefore Ordered, Adjudged and decreed on this the 29th day of June, A. D. 1935, by the Court that the license issued by the State of Texas to Glover Speer, the defendant, to practice medicine, be and the same is hereby cancelled, annulled and held for naught."

Inveighing in this court against the deprivation of his right to so practice his profession, the appellant through his counsel, the able Mr. J. S. Bracewell, thus summarizes his contentions:

"The questions presented are:

"(1) Whether it shows conviction of a crime made a felony under the laws of the State of Texas at the time of the conviction.

"(2) As to whether or not it shows defendant guilty of violating the Medical Practice Acts of the State of Texas.

"(3) Whether the record shows conviction of a crime involving moral turpitude.

"(4) The sufficiency of the evidence to support the issues presented by the court and the judgment rendered upon the verdict.

"(5) Whether the court should not have left to the jury the question of whether the license should have been suspended or revoked."

■■■ This tribunal is unable to accept the viewpoint these suggested inquiries present; on the contrary, appellant having elsewhere in his brief frankly admitted that he had been so convicted of a felony in the United States District Court substantially as alleged against him by the appellee State of Texas, there would seem to it to be little left for discussion; the main basis for appellant's position is his insistence that the offense for which he had been so convicted was then a felony under the laws of the United States only, not under those of the State of Texas, and that, before a Texas court could with authority revoke his license to practice medicine in this state, it had to be shown that he had been convicted of an offense which was then a felony under the laws of Texas; in support of that, he cited articles 723 and 725 of the Penal Code of Texas as they existed at the date of his federal court conviction in 1930, denouncing such an offense by prescribing only the penalty for the commission of it to be a fine of not less than $25 or more than $200, or imprisonment in jail for not less than one month nor more than one year, or both, but not expressly reciting that such offense constituted a felony.

It is true that, subsequent to appellant's federal court conviction, that is, in 1931 (Acts 1931, c. 97 [amended Acts 1933, c. 204]), our Legislature amended this article 725 by adding article 725a, Vernon's Ann.P.C., with the specification that "any person violating this Section shall be guilty of a felony," but in this court's opinion that addition in no way cleared appellant from a plain violation of our law as it theretofore existed; indeed, when R.S. arts. 4505 and 4506, upon which this action was based, are looked to, it seems clear that their terms did not require that appellant should have been convicted of an offense that was then of the grade of a felony in this State, but only of an offense that was of the grade of a felony anywhere; at the same time, however, while that broad view under these statutes is the one here taken, it would further seem that our Penal Code as it existed in 1930 did elsewhere provide that appellant's offense was at that time at least of the grade of a felony in this State, by this express provision in its Penal Code, art. 47: "An offense which may—not must—be punishable by death or by confinement in the penitentiary is a felony."

Since the cited statutes of the United States under which appellant was convicted prescribed that a person violating them may be confined in the penitentiary, it would seem plain that he had thus been convicted of a felony, as so defined by quoted article 47 of the Penal Code of that date.

Recurring now to the rights and privileges of the State as appertaining to the relief here awarded it upon the basis of R.S. arts. 4505 and 4506, the first of these clearly declares that one cause for which the State Board of Medical Examiners may either refuse to admit persons to its examinations, or to issue them certificates to practice medicine, is the conviction of such person of a crime of the grade of a felony—not that the crime be of the grade of a felony in this state; wherefore the natural and reasonable construction would seem to follow that the board may make such refusal if the applicant has been convicted of a felony anywhere.

Succeeding article 4506 just as unmistakably and unconditionally adds that the license may be revoked for any cause for which the board would be authorized to refuse to admit persons to its examinations, one of such causes being a showing that they had been convicted of a crime of the grade of a felony—not of one that is a felony in this State.

Since admittedly appellant was convicted of a felony under the laws of the United States, the learned trial court correctly held his license to practice medicine in Texas was subject to cancellation on that ground alone.

■■ In the next place, that moral turpitude inhered in the acts from which the conviction resulted is a legitimate, if not inevitable, inference; appellant's naive argument to the contrary upon this feature presents that, since the Harrison Narcotic Act is a revenue measure only, a violation of it does not constitute a crime involving moral turpitude; but, while the concession may be freely made that it does have that character in so far, perhaps, as may be necessary to uphold the power of Congress under the Constitution in enacting it, its further and underlying purpose is to regulate and control the sale of narcotics in consonance with a widespread feeling that

it is not good morals to sell such dangerous drugs except in pursuance of the professional ministrations of a physician in treating patients; that view of it was taken by Justice Holmes in United States v. Jin Fuey Moy, 241 U.S. 394, 36 S.Ct. 658, 659, 60 L.Ed. 1061, Ann.Cas.1917D, 854, when he said "It may be assumed that the statute has a moral end as well as revenue in view." See, also, Rudolph v. U. S. ex rel. Rock, 55 App.D.C. 362, 6 F.(2d) 487, 40 A.L.R. 1042; United States v. Doremus, 249 U.S. 86, 39 S.Ct. 214, 63 L.Ed. 493; Seitz v. Ohio State Medical Board, 24 Ohio App. 154, 157 N.E. 304; In re Finch, 156 Wash. 609, 287 P. 677; Indiana Board of Pharmacy v. Haag, 184 Ind. 333, 111 N.E. 178; 2 Bouv. Law Dict. Unabridged, Rawle's Third Revision, p. 2247, Moral Turpitude.

As these just cited cases make manifest, such a sale of narcotics as was made in this instance in violation of the Harrison Act made out an instance of moral turpitude, in that appellant was shown to have sold 18 grains of morphine to Barney Young on each of the days of April 23 and 24 of 1929, and 2½ grains to J. W. Harris on January 29 of 1930.

Moreover, that conviction, which was visited upon him after a plea of guilty to the indictment charging violation of the act against him in 14 different counts, together with his own confession, which has been copied in full herein, perforce of their very contents, showed that he was not only convicted in the federal court for selling morphine unlawfully, but that he was also convicted of importing narcotics into the United States, that is, of smuggling, as charged in counts 8 and 9 of the indictment; wherefore, even though the sale by itself should not be considered a crime involving moral turpitude, smuggling is so regarded, and the record shows that he was found guilty of all counts as detailed in the indictment. Articles 4505 and 4506, Revised Civil Statutes of Texas 1925; White v. Andrew, 70 Colo. 50, 197 P. 564; In re Shepard, 35 Cal.App. 492, 170 P. 442.

■■■ There was no error in the court's refusal to submit to the jury the question of whether or not appellant's license to practice medicine in Texas should be canceled, because, obviously, that question was one of law for the court. R.S. art. 4507 of 1925 prescribes the procedure in suits to revoke a physician's license, first setting out antecedent facts that shall be determined by the jury (unless one has been waived), and then declares the exclusive power of the court to pronounce the judgment of revocation on the basis of a verdict of guilty having been already found. Neither does a deeper wade into the evidence, the circumference of which has been described supra, disclose any of the claimed lack of support for the stated fact findings of either court or jury—quite the contrary; indeed, holding as this court does, under such authorities as Seitz v. Ohio State Medical Board, 24 Ohio App. 154, 157 N.E. 304; Hughes v. State Board, 165 Ga. 892, 142 S.E. 285; Lewis v. State Board, 23 Ga.App. 647, 99 S.E. 147; In re Finch, 156 Wash. 609, 287 P. 677; 22 C.J. § 1206, p. 968; Sumner v. Kinney (Tex.Civ.App.) 136 S.W. 1192; Dent v. State, 43 Tex.Cr.R. 126, 65 S.W. 627; Johnson v. State, 39 Tex.Cr.R. 625, 48 S.W. 70; Tuttle v. State (Tex.Cr.App.) 49 S.W. 82; Creosoted Wood Block Paving Co. v. McKay (Tex. Civ.App.) 234 S.W. 587, that the indictment and consequent judgment against appellant, especially as supplemented by his written confession and stipulated admissions on this trial, were admissible as showing not alone the mere fact of his conviction, but also that it had occurred for all the violations charged in the indictment, the jury's verdict was little more than a formality, having been rendered on undisputed evidence. In other words, among other things, not only was it thus indisputably established that the "Barney" referred to in appellant's confession was the Barney Young named in the judgment of conviction, but, further, that the sales to him and to J. W. Harris had been made as charged then and found by the federal court. Another conclusive answer to the strictissimi juris rule of construction appellant insists upon in this connection, in urging that no competent proof was made of the fact that the "Barney" named in his confession was Barney Young with whom the judgment of his conviction had to do, is the rule of evidence long ago established in this court that, in such circumstances, a litigant who alone has knowledge of such a missing link in the evidence and does not himself disclose it, thereby becomes properly subject to having the fact of that omission used against him. Texas Co. v. Charles Clarke & Co. (Tex.Civ.App.) 182 S.W. 351.

Finally, the evidence so viewed showed that Barney Young, to whom appellant so

sold 36 grains of morphine within two days, for which sales he was convicted in the federal court, was an addict; the two eminent physicians before referred to testified that only an addict could take that much morphine and live, which fact was universally known and accepted in the medical profession; hence it follows as night the day that so great a quantity could not properly be prescribed for any other than an addict; further, that in effecting the cure of an addict of such a habit, only about one-third of that amount would or could properly be prescribed. The reasonable, if not unescapable, inference from this testimony also is that appellant on the undisputed proof had been unlawfully prescribing morphine for an addict who was not even under his treatment as such, thereby placing himself beyond the pale of all professional or reputable conduct.

It follows from these conclusions that the judgment should be affirmed; it has been so ordered.

Affirmed.