[No. C. D. 1590. *En Banc.* September 14, 1938.]

*In the Matter of the Application of* CHRIST D. LILLIONS
*(formerly Christos D. Liliopoulos)*
*for Reinstatement.*[1]

*Jay C. Allen* and *Christ D. Lillions,* for petitioner.

*S. M. Brackett,* for board of governors.

BEALS, J.—Christos D. Liliopoulos was admitted to the bar of the state of Washington June 17, 1913, and, save as to the period he served in the United States army during the World War, practiced his profession in the city of Seattle until his disbarment February 5, 1934. Subsequent to 1934, his name was, by order of court, changed to Christ D. Lillions, by which name he will be referred to in this opinion.

January 31, 1931, Mr. Lillions was by information charged with the crime of larceny by embezzlement. To the information he pleaded not guilty, and after a lengthy trial, was found guilty as charged, whereupon he was sentenced to confinement in the state penitentiary for a term of not less than one year nor more than fifteen years. The trial court, on its own motion,

[1] Repored in 82 P. (2d) 571.

suspended the sentence, pending further order of the court. On appeal, the judgment of guilty was affirmed. *State v. Liliopoulos,* 167 Wash. 686, 10 P. (2d) 564.

A complaint was filed with the board of law examiners of the state of Washington, charging Mr. Lillions with unprofessional conduct, and after a hearing, the board made findings of fact and, by a vote of two to one, recommended that Mr. Lillions be permanently disbarred from the practice of law. Upon review before this court, the recommendation of the majority of the board of law examiners was followed, and December 8, 1933, an opinion was filed, directing that Mr. Lillions be disbarred. *In re Liliopoulos,* 175 Wash. 338, 27 P. (2d) 691. Final order of disbarment was entered February 5, 1934.

Subsequently, Mr. Lillions applied to this court for reinstatement, and after a hearing, his application was denied. During the winter of 1938, Mr. Lillions again petitioned for reinstatement, and the matter has once more been submitted to this court for determination.

The board of governors of the state bar association investigated the matter presented by Mr. Lillions' petition, and unanimously adopted a resolution denying his application for reinstatement, the proceedings of the board of governors having been regularly certified to this court and made a part of the record herein. The attorney for the board of governors appeared before this court and opposed the petitioner's application for reinstatement, the petitioner appearing in person on his own behalf and also by counsel.

In 1915, petitioner was appointed consul of Greece, his jurisdiction extending throughout the northwest portion of the United States. The criminal offense with which petitioner was charged arose out of certain transactions in which petitioner, as Greek consul,

handled funds belonging to citizens of Greece. Petitioner contended at his trial, and has always contended, that he was not guilty of embezzlement, but that money was due him for which he was not allowed proper credits. This matter was foreclosed by the verdict of the jury and the judgment entered thereon by the court. In this connection, however, the remarks of the trial judge at the time of the imposition of sentence are pertinent. The judge said:

"It is the judgment of the court that the defendant shall serve a term of not less than one year and the maximum such as is fixed by the statute. This sentence, however, will be suspended pending the further order of the court.

"I do so because I am convinced that the defendant was sincere in the transactions which have formed the basis of this action. The method which he chose to enforce settlement of his claims with the government was wrong. In view of that I see no object in punishing the defendant any more than by a nominal sentence, which is sufficient. The sentence will be suspended pending the further order of the court."

These remarks were made by the late Honorable A. W. Hawkins, of Yakima county (who presided at petitioner's trial in King county), a judge of recognized ability and long experience, whose opinion is entitled to great weight.

In affirming the judgment of guilty, this court, speaking through Judge Holcomb, said:

"For some time prior to 1931, appellant had an apparently honest controversy with the Greek government, concerning certain accounts he claimed due him from that government for services and expenses rendered as an attorney at law respecting workmen's compensation laws in this and other states, and his efforts to secure changes in the Greek laws which would benefit Greek citizens, or heirs, by reciprocal provisions here and in other states. Although appellant was permitted by the trial court to testify at large,

and introduce much correspondence concerning this official negotiation, the net result of it was that his superiors, both in Greece and in Washington, D. C., decided against his claims and denied them."

In the majority report of the board of law examiners recommending petitioner's disbarment, it is stated that petitioner, as administrator of the estates of two citizens of Greece, came into possession of a substantial sum of money, which

". . . following his usual custom, respondent commingled . . . with his consulary account. He claims that at the time he filed the final report the Greek government was owing him a large sum of money (more than sufficient to make up the apparent shortage) on account of services rendered during the years 1922 and 1923 in connection with the amendment of the Industrial Insurance Act of the Kingdom of Greece in such a way as to give Greek citizens reciprocal rights with American citizens under the industrial insurance acts of that nation and of the several American states. His claim was denied by the Greek government and upon the insistence of the heirs, the sureties on respondent's bond made good the shortage in his administrator's account, he at the time conveying to the sureties certain equities in Seattle real estate, the value of which does not appear."

The report of the majority, after noting the finding of the jury against petitioner's contentions, concludes:

"Were we now to give credence to respondent's claim we would in effect be impeaching not only the verdict of the jury, but of the judgment entered upon that verdict. Your Honors have already held that a judgment of conviction in a felony case is conclusive of the guilt of the defendant when made the basis of disbarment proceedings. (*In re Finch,* 156 Wash. 609.) The statute makes conviction of a felony involving moral turpitude grounds for suspension or disbarment. Under the authority of the *Finch* case it seems to us that the only question to be determined is whether the crime with which respondent stands convicted is

one involving moral turpitude to such a degree that he should be disbarred instead of suspended. That embezzlement of trust funds in the possession of an attorney does involve moral turpitude of the grossest kind is not, in our opinion, open to debate. It is therefore our recommendation that respondent be permanently disbarred from the practice of law in this state."

The majority report was signed by Messrs. Dix H. Rowland and A. R. Hilen. Thomas E. Grady, the third member of the board, signed a minority report, stating his thought that the opinion of this court in *In re Finch*, 156 Wash. 609, 287 Pac. 677, referred to in the report of the majority of the board, did not require that an order of disbarment should be entered in petitioner's case, and that, after careful consideration of the record in the case of *State v. Liliopoulos, supra,* he was of the opinion that

". . . the evidence adduced at the trial and that submitted by respondent at the hearing before the board justifies the conclusion that in taking money from the funds in his hands he did not do so with any intent to defraud anyone but with an honest feeling and conviction that the government of Greece was indebted to him for services performed and that whatever he took from the funds in his hands in payment for his services should and would be replaced by the government of Greece, to the end that claims of the heirs of the Chounos estates might be satisfied therefrom.

"The services rendered by the respondent were important and valuable and without them Grecian subjects in this country would be denied the benefits of the workmen's compensation act. Over a period of years the affairs of the Greek government were in a somewhat chaotic condition and it seemed impossible for respondent to get anything done through the foreign office in the way of payment for services rendered. All of the funds coming into the hands of the respondent in his official capacity were kept in a common fund with the knowledge and consent of the Greek

government and he was at liberty to disburse the same. The respondent finding that he could not get any satisfaction from the Greek government the impulse to reimburse himself was no doubt strong, and while I feel that he should have sought some other method of reimbursement I do not believe the circumstances under which he took the money justified a conviction of larceny by embezzlement.

"If this court agrees with what is said in the report of my associates, then I recommend that the respondent be disbarred as the crime of which he was convicted involves moral turpitude, but if the court believes that the statement of facts containing the evidence adduced at the trial and the supplemental testimony given by the respondent at the hearing before the board can be used as a basis for determining whether or not the respondent by virtue of what he did is not a fit and proper person to longer be a member of the bar, then I recommend that the proceedings be dismissed."

This court, speaking through Judge Main, in directing that an order of disbarment be entered, *In re Liliopoulos, supra,* said:

"The first inquiry must be directed to the effect to be given to that provision of the statute which makes the record of conviction conclusive evidence. That question was presented in the case of *In re Finch,* 156 Wash. 609, 287 Pac. 677, and it was held that the court would not go behind the record of conviction."

It was the opinion of the court that, in determining whether an order of disbarment should be entered, the court should not take into consideration the fact that the sentence imposed upon the petitioner herein had been suspended. Judge Holcomb, who had spoken for the court in affirming the judgment of conviction, dissented from the conclusion reached by the other members of the court, saying that, in his opinion, a sentence of suspension would be adequate punishment.

Under date December 10, 1934, the governor of the state of Washington executed a document, which was

regularly attested by the secretary of state, and which, after reciting petitioner's conviction and the imposition of sentence, together with the suspension thereof, continues:

"Whereas it also having been made to appear that the conduct of C. D. Liliopoulos over a period of months, has been such as to justify my belief that he is trustworthy and reliable and will conduct himself as a law abiding citizen without further transgression of the laws of the state of Washington or the United States of America, and that his final release is compatible with the welfare of society;

"Now therefore, I, Clarence D. Martin, governor of the state of Washington, by virtue of the power vested in my office by the constitution and laws of the state of Washington, do hereby release and discharge said C. D. Liliopoulos from any further or other punishment, penalty, or obligation by reason of said crime and restore his civil rights forfeited by reason of his conviction and confinement."

In connection with petitioner's application for reinstatement, many letters were filed with the board of governors of the state bar association, recommending that petitioner's application be granted. These letters are before us, and bear the names of lawyers of recognized character, ability and experience. Under date February 23, 1937, Judge Hawkins wrote to the board as follows:

"Gentlemen:

"Mr. C. D. Liliopoulos advises me he is applying for reinstatement in the practice of law. He also advises me it has been three years and three months since he was suspended from practice.

"I presided at the trial of Mr. Liliopoulos, and I felt then, and have had no reason to change my notion, that he did not deliberately withhold funds due residents of the Greek nation, but that he was attempting to use a method to collect a claim he was honestly asserting against the Greek government, although that method was not well founded as a matter of law, and

his claim against the government did not constitute a valid defense to the charge made against him. Under all the circumstances of the case, I feel that the discipline he has been subjected to, that is, over three years suspension, is quite adequate. My notion is that, unless something has occurred since that time to influence you in your action, he should be reinstated."

Messrs. Dix H. Rowland and A. R. Hilen, the members of the former board of law examiners who originally recommended petitioner's disbarment, wrote to the board of governors on petitioner's behalf.

Mr. Henry Russell, adjuster of the northwest claim department of the Massachusetts Bonding and Insurance Company, of Massachusetts, which company had made good petitioner's shortage, has stated in writing that petitioner

". . . has made satisfactory reimbursement arrangements with this company, by having made what is to him, in his circumstances, a substantial down payment, and by agreeing to liquidate the balance on a definite basis."

This indicates that petitioner has done something, at least, to make good the loss occasioned by his dereliction.

It appears that petitioner has not sought to evade the order of disbarment by engaging in the practice of law, but on the contrary has obeyed the mandate of the court, although devoting considerable time to legal studies, particularly, as noted by the librarian of the King county law library, "with reference to recent reviews of the law in its various phases."

Petitioner was admitted to the bar in this state twenty-five years ago, and has reached an age which would make it difficult for him to engage in business for which he has had no special training. If he is ever to be permitted to again practice his profession,

and become a useful member of society, the time of his reinstatement should not longer be postponed.

Petitioner for many years practiced his profession in the city of Seattle, and on several occasions has appeared before this court. As far as the record discloses, his conduct, save in connection with the matter which resulted in his disbarment, has been honorable, and in the cases which he has presented to this court, petitioner has showed industry and ability. The judge before whom petitioner was tried, the three members of the board of law examiners who passed upon the suggestion of the attorney general that petitioner be disbarred, and many worthy members of the bench and bar of this state have recommended that petitioner be restored to the active practice of his profession. On the other hand, we have the unanimous recommendation of the board of governors of the state bar association, who recommend that petitioner's request for reinstatement be denied.

Petitioner was convicted of a serious offense involving moral turpitude, but in such a case as this, it is proper to consider all the facts in connection with his trial, including the inherent nature of the acts committed. The judge before whom petitioner was tried, on two different occasions stated it to be his opinion that petitioner was not deliberately dishonest in what he did, but was attempting to collect a claim against the Greek government, which claim he was asserting in good faith. It is not a question of punishing Mr. Lillions for his offense; he has already suffered the penalties of the law. The question now is whether or not he should be permitted to again practice his profession. We are clearly of the opinion that this court should grant such permission. He should be granted the opportunity to rehabilitate himself in the community in which he and his wife have lived

for many years, and to show that he can be a useful member of society.

It is accordingly ordered that Christ D. Lillions be restored to the privilege of practicing law in this state.

STEINERT, C. J., MAIN, HOLCOMB, GERAGHTY, and BLAKE, JJ., concur.

ROBINSON, J. (dissenting)—In dissenting from the foregoing order, I do not feel at liberty to discuss the merits of the matter. Since the order reinstates the petitioner to all of his former rights and privileges as a member of the bar, all debate and discussion concerning his past delinquency should now be considered foreclosed, lest something might be said which would tend to handicap the petitioner in his effort to rebuild and restore his professional life. These considerations, however, do not preclude an inquiry as to the wisdom and propriety of entering the order over the protest and against the unanimous recommendation of the board of governors of the state bar association.

For many years, there has been no more insistent and persistent public demand than that the bar take effective action to discipline its unworthy members. The bar of this state has made a sincere effort to comply with that demand. To set up effective disciplinary machinery was not only the major reason for the creation of the integrated bar, but the successful accomplishment of that purpose has also proved to be the principal justification for its continued corporate existence.

The fact that each member of the board of governors is chosen from a different Congressional district would seem to be a sufficient check against the operation of local personal prejudice in dealing with matters of discipline. There is no reason to suppose that the members of the board of governors are any less merci-

ful or any less just minded than the members of this court. They are, obviously, in a vastly better position to know the facts concerning such matters and the public reaction to them than we can possibly be, since they are each and all engaged in the active practice of the law and, therefore, continuously dealing with, and mingling with, the public, while we have been semi-cloistered for varying periods of from one to twenty-six years.

The problem of maintaining discipline among the members of the bar is, in many respects, not unlike the problem of maintaining discipline in the public schools. Long experience in that field has repeatedly demonstrated that no effective discipline can be maintained in any public school system unless the disciplinary acts of its principals and teachers are customarily sustained and approved by the final authority, the board of education.

In my opinion, the unanimous recommendation of the board of governors, as regards disciplinary matters, should not be disregarded, except in very exceptional cases. I can see no reason for not according to the unanimous determination of the board at least as great a presumption of verity and finality as we are accustomed to accord to the findings and determinations of a superior court in the ordinary case which comes before us for review. That presumption, I think, was not accorded to the recommendation of the board of governors in the instant case.

MILLARD and SIMPSON, JJ., concur with ROBINSON, J.