# In re PEARCE.

No. 6520.   Decided April 28, 1943.   (136 P. 2d 969.)

*Mulliner, Prince & Mulliner*, of Salt Lake City, for R. O. Pearce.

*Edward F. Richards* and *L. O. Thomas*, both of Salt Lake City, for Utah State Bar.

WADE, Justice.

R. O. Pearce, hereinafter referred to as the plaintiff, is a member of the Bar of this state. On April 29, 1939, he was convicted in the District Court of Salt Lake County, of the crime of criminal conspiracy, an indictable misdemeanor. This conviction was affirmed by this court on December 11, 1941. *State* v. *Erwin,* 101 Utah 365, 120 P. 2d 285. Pursuant to Sec. 6-0-36, U. C. A. 1943, the clerk of the District Court in which he was convicted transmitted to this court a certified copy of the record of conviction and the Board of Commissioners of the Utah State Bar has recommended that he be disbarred.

Section 6-0-36, Utah Code Annotated 1943 is as follows:

"Upon conviction of an attorney and counselor of felony, or misdemeanor involving moral turpitude, the judgment of the supreme

court must be that the name of the accused be stricken from the roll of attorneys and counselors of the court, and that he be precluded from practicing as such attorney or counselor in all the courts of this state; upon conviction in other cases, the judgment of the court may be, according to the gravity of the offense charged, deprivation of the right to practice as an attorney or counselor in the courts of this state permanently or for a limited period. The clerk of the court in which any such conviction is had must within thirty days thereafter transmit to the supreme court a certified copy of the record of conviction, which shall be conclusive evidence thereof."

Under this statute if the conviction is of a felony this court must strike his name from the roll of attorneys and counselors and preclude him from practicing law regardless of whether it involves moral turpitude or not. If the conviction is of a misdemeanor and involves moral turpitude the same result is reached. However, if the conviction is of a misdemeanor, and it does not involve moral turpitude, then the judgment of the court may be in accordance with the gravity of the offense charged and he may be deprived of his right to practice either permanently or for a limited time only. We, therefore, must determine whether plaintiff's conviction involved moral turpitude.

First, however, we must determine what we may consider in deciding whether moral turpitude is involved. Plaintiff contends that we should consider the transcript of the evidence of the trial which was brought here on appeal from the conviction, in order to determine the nature of the acts, and his state of mind in doing such acts, for which he was convicted. Plaintiff admits that the certified record is conclusive on the question of conviction but contends that in determining whether moral turpitude is involved we should look to the evidence introduced on the trial to determine the nature of the acts and his state of mind in committing the crime of which he was convicted. Counsel for the Bar Commission contends that this court is limited to the record as certified to it by the clerk of the court in which he was convicted, and must determine therefrom

as a matter of law whether moral turpitude was involved.

California and Idaho whose statutes are slightly different from ours, and other states in which the statutes were not fully discussed, have held that the question of whether moral turpitude is involved is a question of ■ law to be determined from the certified record. In re *Collins,* 1922, 188 Cal. 701, 206 P. 990, 32 A. L. R. 1062; In re *O'Connell,* 1920, 184 Cal. 584, 194 P. 1010; In re *McAllister,* 1939, 14 Cal. 2d 602, 95 P. 2d 932; *In re Kerl.* 1920, 32 Idaho 737, 188 P. 40, 8 A. L. R. 1259; In re *Dampier,* 1928, 46 Idaho 195, 267 P. 452; In re *Needham,* 1936, 364 Ill. 65, 4 N. E. 2d 19; In re *Finch,* 1930, 156 Wash. 609, 287 P. 677; In re *Williams,* 1917, 64 Okl. 316, 167 P. 1149. The California and Idaho statutes under which the above cases were tried provide that an attorney may be removed by the Supreme Court for

"His conviction of a felony or misdemeanor involving moral turpitude, in which case the record of conviction is conclusive evidence." C. S. Idaho, § 6578, subd. 1; Code Civ. Proc. Cal. § 287.

This statute seems to say that the record shall be conclusive evidence not only on the question of whether he was convicted but also on the question of whether the conviction involved moral turpitude. Our statute as set out above provides that upon conviction of an attorney of a misdemeanor involving moral turpitude his name must be stricken from the roll of attorneys and that

"the clerk of the court in which any such conviction is had must within thirty days thereafter transmit to the supreme court a certified copy of the record of *conviction,* which shall be conclusive evidence *thereof.*" (Italics added.)

The term "thereof" refers back to the term "conviction" and indicates that the record shall be conclusive evidence of the conviction. This precludes us from making any further inquiry on the question of whether the defendant was convicted but does not provide whether the court may

look to other sources to determine whether the crime of which the attorney is convicted involves moral turpitude.

The certified record of conviction may show very little on the question of whether the defendant was guilty of moral turpitude, while the transcript of the evidence on the trial would disclose the nature of the acts and his state of mind in doing the same for which he was convicted. From the transcript of the evidence the court would clearly be in a better position to determine whether the defendant was guilty of moral turpitude. There is nothing in our statute which prevents the consideration of this testimony, on the other hand the legislature has clearly indicated that where the conviction is for a misdemeanor disbarment is not absolutely required, unless the defendant was guilty of moral turpitude. In the interest of justice the court should look to the record of the trial to determine this question.

We must now look to the record to see what plaintiff was convicted of doing. The indictment says in substance that the defendants (including the plaintiff herein) agreed and conspired among themselves and others to permit, allow, assist and enable houses of ill fame and gambling houses to be kept, maintained and operated in Salt Lake City, knowing such operation to be in violation of law, and that in furtherance of such conspiracy during specified times the defendants did permit, allow, enable and assist such houses to operate and during such times defendants collected money from the operators of such places. The evidence shows that the Mayor, Chief of Police and the head of the Vice Squad whose duty it was to enforce the laws were among the defendants; that plaintiff had no official duty to enforce the laws. The evidence does not show that plaintiff was in the conspiracy at its beginning, his position seems to have been a go-between from the Mayor and Chief of Police to the officers who collected the money. He approached Officer Record, head of the Vice Squad, and asked him to collect from the gambling houses, offering

him $165 per month if he would do this and told him that if he refused he would be replaced. Record refused. Officer Holt collected money from houses of ill fame and took it to plaintiff's office, who took it and asked if that was all. Later Officer Holt was sent to plaintiff's office where plaintiff produced a list of houses of ill fame and asked why he did not collect from them, and when Holt said those places did not make a living he said Holt was doing a good job.

On the question of what does involve moral turpitude it has been said that anything done knowingly contrary to justice, honesty or good morals involves moral turpitude. Bouv. Law Dict. Baldwin's Century Edition, 1934, page 1196; 27 Words and Phrases, Permanent Edition, p. 554; *In re Needham*, 1936, 364 Ill. 65, 4 N. E. 2d 19; In re *Williams*, 1917, 64 Okl. 316, 167 P. 1149; In re *O'Connell*, 1920, 184 Cal. 584, 194 P. 1010; In re *Finch*, 1930, 156 Wash. 609, 287 P. 677; In re *McAllister*, 1939, 14 Cal. 2d 602, 95 P. 2d 932. It has also been held that "generally speaking, crimes malum se involve 'moral turpitude.' " In re *Dampier*, 1928, 46 Idaho 195, 267 P. 452; In re *Bartos* v. *United States District Court*, 8 Cir., 19 F. 2d 722. Moral turpitude implies something immoral in itself regardless of its being punishable by law. *Pippin* v. *State*, 197 Ala. 613, 73 So. 340; In re *Williams*, Mo. App., 113 S. W. 2d 353. Moral turpitude is adaptive; it is determined by the state of public morals and the common sense of the community. In re *Finch*, supra; In re *Dampier*, supra; *Beck* v. *Stitzel*, 21 Pa. 522; Ex parte *Mason*, 29 Or. 18, 43 P. 651, 54 Am. St. Rep. 772; In re *Coffey*, 123 Cal. 522, 56 P. 448.

"Moral turpitude is an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men or to society in general, contrary to the accepted and customary rule of right and duty between man and man." *In re Williams*, Okl., supra [64 Okl. 316, 167 P. 1152]; *State ex rel. Conklin* v. *Buckingham*, 59 Nev. 36, 84 P. 2d 49.

Under any and all of those definitions the acts of which the defendant was convicted involves moral turpitude. It would be a reflection on this state and nation to say that such actions were not contrary to the moral standards thereof. We therefore have no choice or discretion as the statute expressly provides that his name must be stricken from the roll of attorneys and counselors.

The crime of which plaintiff was convicted was not committed while he was acting as an attorney or counselor or in his professional capacity. He contends that in such cases the misconduct must be very infamous or very gross to warrant his disbarment and cites cases to that effect. Undoubtedly that is the correct rule where only misconduct is involved, but where an attorney is convicted of a misdemeanor involving moral turpitude our statute has made a different rule which requires his disbarment. Under our statute above quoted it does not make any difference whether the crime of which he was convicted was committed while acting in his professional capacity or not, the test is whether it involves moral turpitude.

Other matters discussed are fully disposed of in *State* v. *Erwin,* supra.

The plaintiff's name is therefore ordered stricken from the roll of attorneys and counselors of this state, and he is hereby precluded from practicing as such in all the courts of this state.

LARSON, McDONOUGH, and MOFFAT, JJ., concur.

WOLFE, Chief Justice (concurring).

I concur. However, I think conviction of the crime of conspiring to permit, allow, assist and enable houses of ill fame and gambling houses to be kept, maintained and operated in Salt Lake City itself involved moral turpitude. The crime of women prostituting their bodies for a living is understandable. Ofttimes they have been more sinned against

than sinning. Taking a girl's earnings from such traffic is at least as reprehensible as the crime of prostitution itself. The crime of conspiring with officers, whose duty it is to enforce the law, to refrain from enforcing the law for gain and participation in the earnings derived from the carrying on of such activities in violation of law, involves beyond peradventure of a doubt, moral turpitude. "While looking at the transcript of the evidence on the trial would disclose the nature of the acts and state of mind for which he was convicted," I do not think it necessary. The conviction itself by law results in a member of the bar losing his privilege to practice law. It is not discretionary with us as to the judgment to be imposed. Looking at the evidence and assessing from it the culpability or state of mind of the defendant when he committed the acts cannot affect our duty to enter judgment that the name of the accused be stricken from the roll of attorneys and counselors at law. Even were we to conclude that had we been the jury we would not, under the evidence, have convicted the accused, we would be compelled, nevertheless, to disbar the attorney convicted. Just as certain public officers must as a condition of holding their offices keep their record clear of convictions for certain crimes, so must an attorney not suffer himself to have against his record a conviction of a crime involving moral turpitude. Such is a condition of continued privilege of remaining an officer of the courts.