[No. C. D. 2671. *En Banc.* April 2, 1945.]

*In the Matter of the Petition for Reinstatement of*
RAY R. GREENWOOD.[1]

[1] Reported in 157 P. (2d) 591.

*Marion Garland* and *Matthew W. Hill,* for petitioner.

*S. H. Kelleran,* for board of governors.

BEALS, C. J.—Ray R. Greenwood (after passing the bar examination) was admitted to the bar of this court May 13, 1916. After the First World War he practiced law with ability and success in the city of Bremerton. For six years he served with credit as prosecuting attorney for Kitsap county, and thereafter engaged in general practice, making and for years maintaining an excellent reputation as an able and honorable lawyer.

During the month of May, 1940, the board of governors of the Washington state bar association served upon Mr. Greenwood a complaint charging him with several serious breaches of his duty as a member of the bar. The matter was referred to a trial committee, and after a full hearing, the committee made its formal findings and recommendation.

During the course of the hearing, Mr. Greenwood had submitted to the board of governors his resignation from the Washington state bar association and his request that this court strike his name from the roll of members of the bar. The trial committee found that most of the charges of misconduct on the part of the respondent were true, and recommended that his resignation be accepted and that his name be stricken from the roll of attorneys.

Thereafter the board of governors of the state bar association transmitted to this court the record of the trial proceedings, with the recommendation that respondent be disbarred.

Upon submission of the record to this court, the matter was heard *En Banc,* and April 2, 1941, by an unanimous

opinion, the recommendation of the board of governors was approved and the respondent was disbarred. *In re Greenwood,* 8 Wn. (2d) 722, 111 P. (2d) 791.

The opinion of this court contains the following paragraph:

"The trial committee found that, prior to the complaints set out in the proceedings, respondent enjoyed the reputation of being a lawyer of great learning and ability; that discordant domestic relations and the excessive use of intoxicating liquor over the period of five or six years last past contributed largely to the cause for the misdeeds, which in the trial respondent confessed. The trial committee believed that the cause of family discord had been removed, and that respondent frankly, and without evasion, answered all questions and impressed the committee by his candor. The trial committee recommended that the resignation of respondent be accepted. The members of the committee expressed the hope that respondent's conduct in the future would demonstrate, through right living and by abstinence from the use of intoxicating liquor that he is worthy of reinstatement to the bar."

During the month of April, 1944, Mr. Greenwood, by counsel, filed with the board of governors his petition praying that he be reinstated as a member of the bar. In this petition it is alleged that, several months prior to his disbarment, petitioner closed his law office, and that since that time he had done nothing which was in any way related to the practice of law. The petitioner further alleged that for approximately a year after March 1, 1941, he was engaged in the real estate business in the city of Seattle, and that during the month of June, 1942, he was employed by Walker Spruce Company, and that in September of that year he was appointed office manager of the company's camp on Tuxekan island, over one hundred miles northwest of the city of Ketchikan, where he assisted in establishing the camp and conducted its operations; that during the month of December, 1942, he was placed in charge of the company's office at Ketchikan, which position he held until he returned to Seattle, July 20, 1943; that prior to that time he had been engaged in important operations on behalf of his employer and had demonstrated his sobriety, industry,

capability, and general efficiency; that since September 14, 1943, petitioner has been employed continuously at the Associated Shipyards; that while in this employment his conduct has been exemplary; and that he has rendered service entirely satisfactory to his employer.

It clearly appears from the record before us that for several years during and prior to 1940 petitioner indulged in intoxicating liquor to great excess; that his family relations were discordant; and that petitioner in the course of his practice of the law was guilty of unprofessional conduct which merited the action of the bar association in bringing him to trial and the resulting disbarment.

In his petition Mr. Greenwood alleged that he has completely controlled his former desire for intoxicating liquor, that happy relations have been re-established between himself and his wife, and that he earnestly desires an opportunity to rehabilitate himself as a lawyer. Petitioner is now past fifty-two years of age, and manifestly if he is ever to be accorded an opportunity to re-establish himself as a worthy member of the bar, his reinstatement should not be longer delayed.

In support of his application, Mr. Greenwood filed petitions and letters from members of the bar requesting that he be reinstated. The matter, having been brought before the board of governors, was considered at a meeting held July 15, 1944, at which time Mr. Greenwood appeared in support of this application. The board did not refer the petition for reinstatement to any person or committee for investigation, but November 13th following, made its formal recommendation upon the application, which, with the record, was filed in the office of the clerk of this court November 16, 1944. The letters and petitions in favor of Mr. Greenwood's reinstatement were made part of the record, as were also letters protesting against that action, together with a certified copy of a portion of the minutes of a meeting of the Kitsap county bar association held June 19, 1944, from which it appears that a motion that the bar association referred to oppose Mr. Greenwood's reinstate-

ment was carried, nine members voting in favor of the motion, four against it, and nine not voting.

The following is quoted from the recommendation of the board of governors:

"The record upon the original proceedings for disbarment was considered, including the record upon many reprimands which had been given without effect, and also the record upon the application of the said Ray R. Greenwood for reinstatement was reviewed; that the Board determined that the acts and conduct which entered into the order of disbarment and the failure to take heed of the many reprimands established a character such that it is believed that no permanent rehabilitation is likely and that to grant reinstatement would not be in the interest of the public or of the profession and determined further and independently thereof that the showing upon the application for reinstatement is not sufficient to establish any permanent rehabilitation or change of character or that it would be to the interest of the public or of the profession to grant the petition for reinstatement and that the contrary affirmatively appears and therefore recommends to this honorable court that the said petition be denied."

The board then listed and certified to this court the record upon the application for reinstatement, the record upon the disbarment proceeding being of course already on file herein and entitled to due consideration. The record upon the petition for reinstatement consists of twelve items, including the petition itself, letters and petitions recommending that the petition be granted, and letters and recommendations that the application be denied, together with the recommendation of the board of governors.

The record upon the petition for reinstatement contains nothing which indicates that the allegations in Mr. Greenwood's petition to the effect that he has lived a sober, industrious, and upright life for approximately three years prior to the date of the filing of the petition are not true or that during that period he has not in all respects conducted himself as a worthy member of society. The board was of the opinion that his unprofessional and indeed disgraceful conduct during some years prior to his disbarment showed that Mr. Greenwood's character was such that no perma-

nent rehabilitation was probable, and that the showing which he made in support of his application for reinstatement was insufficient to establish that his reformation indicated a permanent change of character.

It is true, as argued by counsel for the board of governors in the brief filed herein, that, in connection with the disbarment of an attorney, the principal consideration is not punishment which might well be inflicted for misdeeds, but rather the fitness of the subject to continue in the practice of law and be held "out to the public as worthy of that confidence which a client is compelled to repose in his attorney." *In re Beakley,* 6 Wn. (2d) 410, 107 P. (2d) 1097.

It is also true that, in considering an application by a disbarred attorney for reinstatement, the court should take into consideration his

" . . . character and standing in the community in which he resided prior to the disbarment, the ethical standards which he observed in the practice of law, the nature and character of the charge for which he was disbarred, his conduct subsequent to the disbarment, and the time that has elapsed between the disbarment and the application for reinstatement." *In re Bruener,* 178 Wash. 165, 34 P. (2d) 437.

The applicant's allegations that for three years prior to the filing of his petition he has lived soberly, industriously, and honorably are nowise controverted. Counsel opposing reinstatement cites the action of the Kitsap county bar association above referred to which discloses that among the members of the bar of that county (in which Mr. Greenwood practiced) there exists strong opposition to petitioner's reinstatement. It appears, however, that nine members of that bar signed a petition asking that Mr. Greenwood be reinstated, while at the meeting of the bar above referred to nine other members voted in favor of the motion opposing his reinstatement.

Counsel argues that the issue here is petitioner's character. It is not denied that, prior to the time when petitioner became addicted to the use of intoxicating liquor to

excess with the resulting discord in his family and loss of standing in his community, petitioner was recognized as a man of high character and a lawyer of integrity and ability, who had with credit held the office of prosecuting attorney in his county. In contrast, the depths to which petitioner descended, to which his addiction to intoxicants contributed, certainly merited disbarment.

His subsequent rehabilitation, which is not controverted, is also entitled to consideration. It would seem that, if petitioner has not now shown that he merits an opportunity to demonstrate that he can again establish himself as an honorable member of the bar, no further period of exemplary conduct would entitle him to that privilege.

It may be noted that the findings of the trial committee in the proceeding which resulted in Mr. Greenwood's disbarment (including the findings referred to by this court in the order of disbarment, *supra*) were approved and adopted by the board of governors. As stated in the order of disbarment, the members of the trial committee unanimously expressed

"  .  .  .  the hope that Mr. Greenwood's conduct in the future will demonstrate through right living and by abstaining from the use of intoxicating liquor that he is worthy of reinstatement to the bar."

Upon the record before us, it may and indeed must be assumed that, during the period referred to in his application for reinstatement, Mr. Greenwood's conduct has been exemplary. The board of governors chose to assume that such was the case, and based its recommendation, as it had a perfect right to do, upon the entire record on file in this court. As stated by its counsel in the brief filed:

"It is true that there is not controversion of the facts set forth in the petition, but considering it, and considering its allegations as true, it was deemed not sufficient to overcome the record as a whole."

For many years Mr. Greenwood practiced his profession with ability and with credit. Then for several years his career reflected discredit upon himself and upon the bar.

Now for several years he has lived a sober and industrious life as a worthy member of society.

In our opinion, he is entitled to an opportunity to demonstrate that his reformation is permanent. If he fails to demonstrate proper appreciation of this opportunity, no one but himself will be to blame.

It is accordingly ordered that Ray R. Greenwood be restored to the privilege of practicing law in this state.

MILLARD, STEINERT, BLAKE, SIMPSON, and GRADY, JJ., concur.

ROBINSON, J. (dissenting)—I had a considerable number of professional contacts with the applicant during the first ten or more years of his practice, and I am glad to say that of those contacts I have only the most pleasant recollections. The attitude I now take is based wholly upon the record, and on reasons which I stated at length in dissenting in a similar case some six or seven years ago. These were, in part, as follows:

"To set up effective disciplinary machinery was not only the major reason for the creation of the integrated bar, but the successful accomplishment of that purpose has also proved to be the principal justification for its continued corporate existence.

"The fact that each member of the board of governors is chosen from a different Congressional district would seem to be a sufficient check against the operation of local personal prejudice in dealing with matters of discipline. There is no reason to suppose that the members of the board of governors are any less merciful or any less just minded than the members of this court. They are, obviously, in a vastly better position to know the facts concerning such matters and the public reaction to them than we can possibly be, since they are each and all engaged in the active practice of the law and, therefore, continuously dealing with, and mingling with, the public, while we have been semi-cloistered for varying periods of from one to twenty-six years. . . .

"In my opinion, the unanimous recommendation of the board of governors, as regards disciplinary matters, should not be disregarded, except in very exceptional cases. I can see no reason for not according to the unanimous de-

termination of the board at least as great a presumption of verity and finality as we are accustomed to accord to the findings and determinations of a superior court in the ordinary case which comes before us for review." *In re Lillions,* 196 Wash. 272, 82 P. (2d) 571.

In the instant case, not only the board of governors of the state bar, but the members of the bar of the applicant's own county, are aligned against his reinstatement; for their vote, nine against, four for, and nine refusing to commit themselves, must, I think, be definitely so regarded when one considers how easy it is to support such an application and how disagreeable it is to actively oppose it.

I am unable to think of any ground upon which I can reasonably regard myself as better qualified to judge of this matter than the members of the applicant's own bar and the board of governors of the state association. I, therefore, dissent from the majority opinion.

JEFFERS and MALLERY, JJ., concur with ROBINSON, J.

[1]Reported in 157 P. (2d) 595.